UNITED STATES of America,
Plaintiff,

v.

Richard E. BRADY et al., Defendants.

No. FL 73–130–Civ–NCR.

United States District Court,
S. D. Florida,
Ft. Lauderdale Division.

Dec. 6, 1974.

Mervyn L. Ames, Asst. U. S. Atty., for plaintiff.

Young, Turnbull & Linscott, Orlando, Fla., Burdick & Daves, West Palm Beach, Fla., Richard E. Brady, Ft. Lauderdale, Fla., Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, Fla., Carey, Dwyer, Austin, Cole & Selwood, Ft. Lauderdale, Fla., for defendants.

ROETTGER, District Judge.

The Federal Government has sued to recover expenditures made under the Hill-Burton Act[1] asserting that its funds were disbursed for a long term care facility (a nursing home) to be operated by a church conference, and that this facility has subsequently been transferred to a corporation for profit.[2] Although several other defendants were

---

1. 42 U.S.C. § 291 et seq.

2. § 291i. Recovery of expenditures under certain conditions; no lien prior to judgment

If any facility with respect to which funds have been paid under section 291f of this title shall, any any time, within twenty years after the completion of construction—

(a) be sold or transferred to any person, agency, or organization (1) which is not qualified to file an application under section 291e of this title, or (2) which is not approved as a transferee by the State agency designated pursuant to section 291d of this title, or its successor, or

(b) cease to be a public health center or a public or other non-profit hospital, outpatient facility, facility for long-term care, or rehabilitation facility, unless the Surgeon General determines, in accordance with the regulations, that there is good cause for releasing the applicant or other owner from this obligation,

originally joined in this action, all of them except American Medical Affiliates, Inc. and Sheffield Convalarium, Inc. have been dismissed by the United States. Both are corporations for profit and have been so during their corporate existence; the title to the nursing home is now in Sheffield.

### Undisputed Facts

The record reveals a clear picture of the following facts:

The Secretary of Health, Education and Welfare disbursed $418,383.18 under the Hill-Burton Act on November 29, 1964 to the Florida Conference of the Pentecostal Holiness Church, Inc. for the construction of a facility for long-term care in Fort Lauderdale. The nursing home was built by the Conference on land owned by Top Line, Inc. after it had secured a 99-year lease. Top Line subsequently conveyed both the fee and its rights under the lease to Griffin Realty Corp. On November 9, 1966, 2675 North Andrews, Inc., a Florida non-profit corporation, acquired the leasehold interest from the church conference. An individual named Richard E. Brady was the president of 2675 North Andrews, Inc. and controlled it.

In January, 1967 Griffin Realty contracted to sell the fee to Richard E. Brady. Brady, however, did not have the title conveyed to himself, but rather had it transferred to REB Investment Corporation, a corporation for profit. Brady, a lawyer, filed suit for REB Investment Corporation suing himself, the church conference and 2675 North Andrews, Inc. in the state circuit court for cancellation of the lease on the ground of default. Consequently, REB Investment Corporation, the alter-ego of Richard E. Brady, became the owner of the nursing home free of the lease. Brady and the other defendants conveniently filed a waiver of their rights to appeal from that judgment in the state court.

In 1970 REB Investment Corp. filed a petition for arrangement under Chapter XI of the Bankruptcy Act in the Southern District of Florida. No plan of arrangement was adopted and the trustee in bankruptcy sold the land and the nursing home to American Medical Affiliates, Inc. The sale was confirmed by the Bankruptcy Court on October 19, 1970. American Medical formed a wholly owned subsidiary, Sheffield Convalarium, Inc., on October 16, 1970 as a corporation for profit; after the sale had been confirmed, American Medical sought and received an order of the Bankruptcy Court on December 4th, 1970, amending the prior sale so that Sheffield Convalarium Inc. would be included as a purchaser and transferee of the nursing home.

The United States of America filed suit on November 7th, 1973 and now seeks summary judgment.

Defendants American Medical and Sheffield have raised a number of defenses:

(1) That 42 U.S.C. § 291i was intended to impose liability only on the original grantee of the federal funds and its transferee, thus making subsequent transferees immune from recovery;

(2) That due process requires that actual notice of the Government's statutory claim be brought to the attention of a transferee before liability may be imposed;

(3) That the Government is estopped because it made no effort to enforce the Hill-Burton claim against previous

the United States shall be entitled to recover from either the transferor or the transferee (or, in the case of a facility which has ceased to be public or nonprofit, from the owners thereof) an amount bearing the same ratio to the then value (as determined by the agreement of the parties or by action brought in the district court of the United States for the district in which the facility is situated) of so much of the facility as constituted an approved project or projects, as the amount of the Federal participation bore to the cost of the construction or modernization under such project or projects. Such right of recovery shall not constitute a lien upon said facility prior to judgment.
As amended June 30, 1970, Pub.L. 91–296, Title 1, § 116(d), 84 Stat. 342.

owners prior to the bankruptcy proceedings in 1970, and also because the Government did not reveal its statutory claim during the bankruptcy proceedings;

(4) That American Medical is not a transferee within the meaning of the statute because of the effect of the amended order of confirmation of sale issued by the Bankruptcy Court which included Sheffield as its assignee.

### Are Subsequent Transferees Immune from Recovery?

In support of their position that 42 U.S.C. § 291i may only be interpreted as imposing liability on the original grantee of the federal funds and its transferee, defendants contend that explicitly singular language is used in the section. For example, section 291i states that recovery may be had from "either the transferor or the transferee." However, such a limited interpretation would be contrary to the intent and purpose of Congress when this legislation was enacted. By including this section in the Hill-Burton Act, Congress wanted to ensure that any facility for which federal funds had been expended would remain public or non-profit for a full twenty years after construction was completed. If subsequent transfers were to be immunized from liability, there would be no incentive to maintain the facility on a public or non-profit basis after title had left the hands of the original grantee. In fact, one transfer into and out of a shell corporation could defeat the plain purpose of Congress. The court, therefore, holds that liability under section 291i is not limited to the initial transferor and transferee, and consequently American Medical and Sheffield come within the purview of the Act.

### Requirements of Notice

American Medical and Sheffield have asserted that before liability may be imposed in this case, the United States must establish that they had ac-

tual notice of the Hill-Burton claim prior to their acquisition of the facility. While the court agrees with defendants that some notice of the Government's claim must be available to purchasers before liability may be imposed on them, due process does not require that actual notice of this claim be brought to the attention of the transferees. It is sufficient that reasonable diligence and prudence would have alerted a prospective transferee to the existence of the Government's claim. The rule is well settled that notice imparted from the proper recording of an instrument in the chain of title is just as legally effective as actual notice. Delesdernier v. O'Rourke & Warren Co., 305 F.2d 929 (5th Cir. 1962); Sapp v. Warner, 105 Fla. 245, 141 So. 124 (1932); McCausland v. Davis, 204 So.2d 334 (Fla.App. 1967). Thus, a purchaser of a facility for which federal funds were expended may not assert his own ignorance of this claim as a defense whenever constructive notice is available.

It is indeed curious that the Federal Government would part with over $400,000 of the taxpayers' money without recording some notice of a potential claim in the land records of the county where the medical facility is to be located, but evidently the government failed to do so. However, constructive notice does exist in the chain of title because another legal draftsman did refer to the potential claim of the United States. The critical language is contained in a promissory note from REB Investment Corp. to The Florida Conference of the Pentecostal Holiness Church, Inc. and is recited in full as part of a mortgage dated September 20, 1967 and recorded in both Broward County (Fort Lauderdale, where the nursing home is located) and Orange County (the headquarters site of the church.) The language in the note does not specifically refer to a Hill-Burton grant [3] but it alerts a title searcher to the potential claim of the United States.

---

3. The exact language of the paragraph is as follows:

"It is specifically understood between the maker and the payee hereof that the obliga-

In addition, Sheffield and American Medical purchased the interest of the bankrupt REB Investment Corp. and took the property subject to the right, title and interest of the trustee.[4]

Furthermore, the Hill-Burton Act is not an obscure piece of legislation. Its existence and its provisions for recovery must be well known to anyone in the business[5] of acquiring a nursing home at a consideration, as here, of nearly $750,000 including the mortgages that were assumed.

### Waiver and Estoppel

Sheffield and American Medical charge that the United States is estopped from pursuing this action because no steps were taken prior to 1970 to enforce the Hill-Burton claim against previous owners of the facility. American and Sheffield also point out that the United States was represented at the bankruptcy proceeding involving REB Investment Corp., but its representative failed to mention the Government's statutory claim to the nursing home. Defendants concede that waiver and estoppel do not apply to actions brought by the United States in its sovereign capacity. They argue, however, that in the circumstances of this case the United States is acting in a proprietary capacity.

When the government enters into ordinary contractual relations with its citizens, it may be said to be acting in a proprietary capacity. But when the government seeks to enforce a public right or protect a public interest it is acting in its sovereign capacity and cannot be disabled by the past actions of its officers or agents. Maxwell Co. v. NLRB, 414 F.2d 477 (6th Cir. 1969); Udall v. Oelschlaeger, 129 U.S.App.D.C. 13, 389 F.2d 974 cert. denied, 392 U.S. 909, 88 S.Ct. 2056, 20 L.Ed.2d 1367 (1968); Capital Funds, Inc. v. SEC, 348 F.2d 582 (8th Cir. 1965); Weiss v. United States, 296 F.2d 648 (5th Cir. 1961).

The instant case falls within the second classification. Over $400,000 in public funds have been expended to construct this nursing home. In return for this money, Congress imposed the condition that the facility remain public or non-profit for twenty years. By initiating this lawsuit, the government is seeking to protect the public interest in this

---

tions of the maker created and existing by reason of the terms and conditions of this promissory note and Mortgage Deed shall forthwith terminate and said promissory note shall be cancelled and the maker hereof and the mortgagor named in said mortgage deed or its successor or assigns shall be entitled to receive from the payee and mortgagee herein named a Satisfaction of that certain Mortgage Deed hereinabove more particularly identified in the event that said maker and mortgagor should ever be adjudicated by a Court of competent jurisdiction to be obligated for the payment of any sum to the United States of America on account of any claim which may be asserted against the maker and mortgagor herein named arising out of or based upon any grant which may have been received directly or indirectly by the FLORIDA CONFERENCE OF THE PENTECOSTAL HOLINESS CHURCH, INC., a non-profit corporation, from the United States of America."

4. The transcript of the hearing on the sale of real property reveals that the attorney for the trustee was asked if ". . . the property is being sold subject to the existing liens of record and other liens, whether they be known or unknown, isn't that correct that you're making no representations?" and his response was: "No, we can make no representations as to other liens."

Another lawyer present at the sale asked: ". . . I take it that any subsequently filed tax or other lien, be a tax or otherwise, would still be the risk of the purchaser?" He asked the question somewhat in the same form again and the attorney for trustee responded, "I have to answer that question with an affirmative yes."

5. The affidavit of the Executive Vice-President of American Medical Affiliates avers that no officer of the corporations had notice that "the U.S.A. was asserting any claim or intended to attempt to assert any claim in the future under the Hill-Burton Act." This is quite different from an assertion of lack of knowledge as to the existence of a Hill-Burton grant for that particular property within the last twenty years. However, in view of the court's holding that constructive notice was sufficient, the precise wording of the affidavit is of no moment, and does not create an issue of fact to bar summary judgment.

facility. Although the court may be disturbed that action was not taken by the United States at an earlier date, it must hold that the defenses of waiver and estoppel are unavailable to defendants American Medical and Sheffield in this case.

### Single or Dual Liability?

The final issue requiring resolution is whether both Sheffield and American Medical, or just Sheffield, may be held liable in this action. American Medical argues that it is not a transferee within the meaning of the statute because an amended order of confirmation of sale was issued, at its request, by the referee in bankruptcy. This order listed the purchaser as "American Medical Affiliates, Inc., a Delaware corporation, or its Assign, Sheffield Convalarium, Inc., a Florida corporation." Defendant American Medical contends the amended order relates back to the date of the original order with respect to the identity of the purchaser, and since the amended order uses the disjunctive "or", the purchaser of the property should be construed as the party to whom title was eventually conveyed, i. e., Sheffield Convalarium.

■ ■ The court is not persuaded by this argument. Upon confirmation of a judicial sale the successful bidder obtains a beneficial or equitable interest in the property. The purchaser becomes the substantial owner of the property. The only act which remains to be done is the transfer of legal title. Godfrey v. Powell, 155 F.2d 51 (5th Cir. 1946). See, 47 Am.Jur.2d, Judicial Sales §§ 219–221 (1969). In this case, defendant American Medical became the equitable owner of the nursing home from the date of the order of confirmation of sale, October 19, 1970. The subsequent amendment of the order did not affect this status as equitable owner. When American Medical later assigned its interest in the facility to the newly formed Sheffield Convalarium, Inc., it became a transferor within the meaning of section 291i, and also became subject to its penalties.

It appearing to the court that there are no genuine issues of material fact, and the plaintiff is entitled to judgment as a matter of law, it is

Ordered and adjudged that plaintiff's motion for summary judgment as to liability against defendants American Medical Affiliates, Inc. and Sheffield Convalarium, Inc. is granted. It is

Further ordered and adjudged that counsel for the parties shall meet within thirty (30) days from the date of this order for the purpose of determining the present value of the facility. If the parties are unable to reach an agreement on this matter, counsel for the plaintiff should so advise the court, and this case will then be set for trial on the issue of damages as determined by the statutory formula.