**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**COWETA COUNTY HOSPITAL AU-THORITY, Defendant-Appellant.**

**No. 85–8142.**

United States Court of Appeals,
Eleventh Circuit.

Dec. 6, 1985.

Delia T. Crouch, Newnan, Ga., for defendant-appellant.

Nina L. Hunt, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and DUMBAULD *, District Judge.

KRAVITCH, Circuit Judge:

The correct interpretation of the refund provisions of the Hill-Burton Act, 42 U.S. C.A. § 291i (supp. 1985), is the issue in this case. The United States filed an action in the district court seeking recovery of funds advanced under the Act to Coweta County Hospital Authority (the Authority); the basis for the recovery was the Authority's transfer of its hospital to a for-profit pri-

* Honorable Edward Dumbauld, U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

vate health care provider. The parties, agreeing that no issue of material fact existed, filed cross motions for summary judgment. The sole issue on appeal is whether the Authority qualifies for a "good cause" waiver of the recovery. The district court, 603 F.Supp. 111 (N.D.Ga.), held that the waiver provision of 42 U.S. C.A. § 291i(d)(2) did not apply and ruled in favor of the United States.

The Hill-Burton Act is intended to provide funds to enable local governments to furnish adequate hospital and clinical facilities to all of their citizens. 42 U.S.C. § 291. In October 1977, the Authority completed a renovation and expansion project at Coweta General Hospital. The total cost of the project was $1,328,572, of which $240,000 were federal funds awarded under the Hill-Burton Act. On July 14, 1982, the Authority agreed to sell the facility to General Hospitals of Humana, Inc. (Humana), and the transaction was closed on December 1, 1982. The Authority and Humana executed a contract as part of the sale under which Humana agreed to provide a certain amount of care to indigent residents of the area.

Recipients of Hill-Burton funds have an obligation to provide care for indigents. 42 U.S.C. § 291c(e). The recovery provision of the Act is one way in which this obligation is enforced.[1] This provision provides:

**(a) Persons liable**

If any facility with respect to which funds have been paid under section 291f of this title shall, at any time within 20 years after the completion of construction or modernization—

(1) be sold or transferred to any entity (A) which is not qualified to file an application under section 291e of this title, or (B) which is not approved as a transferee by the State agency desig-

nated pursuant to section 291d of this title, or its successor, or

(2) cease to be a public health center or a public or other nonprofit hospital, outpatient facility, facility for long-term care, or rehabilitation facility.

the United States shall be entitled to recover, whether from the transferor or the transferee (or, in the case of a facility which has ceased to be public or nonprofit, from the owners thereof) an amount determined under subsection (c) of this section.

.        .        .        .        .

.        .        .        .        .

**(d) Waiver**

(1) The Secretary may waive the recovery rights of the United States under subsection (a)(1) of this section with respect to a facility in any State if the Secretary determines, in accordance with regulations, that the entity to which the facility was sold or transferred—

(A) has established an irrevocable trust—

(i) in an amount equal to the greater of twice the cost of the remaining obligation of the facility under clause (2) of section 291c(e) of this title or the amount, determined under subsection (c) of this section that the United States is entitled to recover, and

(ii) which will only be used by the entity to provide the care required by clause (2) of section 291(e) of this title; and

(B) will meet the obligation of the facility under clause (1) of section 291(e) of this title.

(2) The Secretary may waive the recovery rights of the United States under subsection (a)(2) of this section with respect to a facility in any State if the Secretary determines, in accordance with regulations, that there is good cause for

---

**1.** After the United States filed its action for recovery in this case, Congress enacted amendments to the recovery provision. The amendments did not change the bases for recovery, but added an additional ground under which the Secretary may waive recovery. The parties have not argued the issue of which version of the statute applies, apparently agreeing that the amendments do not affect the issues in this case. The amendments did rearrange the codification and the citations in this opinion will be to the new version of the recovery statute.

waiving such rights with respect to such facility.

42 U.S.C.A. § 291i (supp. 1985).

Following the transfer to Humana, the United States filed an action to recover the funds advanced for the 1977 renovation and expansion. The basis of the action was section 291i(a)(1), that the facility had been "sold or transferred to any entity [Humana] (A) which is not qualified to file an application under section 291e of this title." It is not disputed that Humana is such an entity.

The Authority argues, however, that the transfer to Humana also fits under section 291i(a)(2) because the hospital had "cease[d] to be a public health center or a public or other nonprofit hospital." According to the Authority, the facility is no longer a public hospital because it is now a private hospital. Hence, it argues, the transfer being within section 291i(a)(2), the Authority may qualify for a "good cause" waiver of the recovery, 42 U.S.C.A. § 291i(d)(2) (supp. 1985), and its contract with Humana to continue providing indigents with care constitutes "good cause."

The interpretation of section 291i(a) advanced by the Authority is untenable. If we were to construe section 291i(a)(2) as applying to transfers to for-profit private health care providers such as Humana, section 291i(a)(1) would be superfluous. Section 291i(a)(1) applies when there is a transfer to an entity not eligible to receive Hill-Burton funds; only public and nonprofit agencies are eligible to receive Hill-Burton funds. Thus, by definition, any transfer to an ineligible entity means that the facility is no longer a public or nonprofit hospital. Under the Authority's interpretation, therefore, any transfer within section 291i(a)(1), would also be within section 291i(a)(2), because the facility would no longer be a public or nonprofit health care facility.

The Authority's interpretation would rob section 291i(a)(1) of any operation and must be rejected. Congress set forth two separate provisions for a reason. Section 291i(a)(1) applies in cases such as the one before us, where the recipient of the Hill-Burton funds transfers its facility to ineligible private hands. Section 291i(a)(2) applies where the recipient retains the facility but converts its use to ineligible purposes. We hold that the liability of the Authority in the current dispute is based on section 291i(a)(1), and that section 291i(a)(2) does not apply.

The Authority also claims that if its transfer to Humana does fall within section 291i(a)(1), then the "good cause" waiver set forth in section 291i(d)(2) should be interpreted as applying to section 291i(a)(2) transfers as well. This argument is no more than a variation of the argument rejected above. The only difference between liability based on section 291i(a)(1) and liability based on section 291i(a)(2) is the availability of a "good cause" waiver. If Congress had intended the "good cause" waiver to apply in all cases it would not have needed to set forth two separate types of liability. Instead, Congress could have provided for liability any time a facility is no longer used as a public or nonprofit hospital and authorized a waiver of this liability for good cause. Rather than doing so, Congress elected to set forth two separate types of liability.

The same argument was rejected in *United States v. First Georgia Bank*, 529 F.Supp. 384 (N.D.Ga.1982), a case decided prior to the recent amendment of the Act. The court in *First Georgia* simply stated that "the statute unambiguously places the waiver provision in subsection (b) [now section 291i(a)(2)] and this subsection makes no reference to liability based on subsection (a) [now section 291i(a)(1)]." 529 F.Supp. at 385. The court also observed that its interpretation was consistent with the regulations promulgated by the Secretary of Health and Human Services to implement the Act and that the interpretation contained in those regulations was entitled to substantial deference. We agree with the reasons set forth in *First Georgia.*

The amendment to the statute confirms our conclusion that the "good cause" waiver cannot apply in this case. As noted in *First Georgia*, the former statute simply

set forth two bases for liability and inserted a "good cause" waiver provision in one of them. The new statute provides that the Secretary may waive the right to recover under section 291i(a)(2) for "good cause," but provides that the Secretary may waive recovery under section 291i(a)(1) only if the agency establishes an irrevocable trust to meet its obligation to provide health care to indigents. 42 U.S.C.A. § 291i(d) (supp. 1985). It is apparent, therefore, that Congress did not intend to allow "good cause" waivers in the case of transfers to for-profit health care providers such as Humana.[2]

The Authority contends that the interpretation it advances is consistent with the purpose of the Hill-Burton Act because the contract executed as part of the transfer ensures future provision of health care for indigents. The Authority states that the funds the United States seeks to recover are being used to implement that contract, and that if the recovery is affirmed the Authority may no longer be able to provide health care to indigents through the Humana contract. We agree that one purpose of the law is to provide such care. Congress sought to attain its goal, however, within the context of limits set forth in the statute. It is not the role of the courts to disregard these limits in order to advance the stated congressional purpose.

AFFIRMED.

---

2. We note that after Congress amended the statute to allow a waiver if the entity establishes an irrevocable trust, the United States offered the Authority an opportunity to establish such a trust and avoid relinquishing the funds. The Authority apparently was not interested in such a trust.