UNITED STATES of America

v.

ST. JOHN'S GENERAL HOSPITAL, Extend–A–Care Nursing Home, Inc., Dollar Savings Bank, Pavillion North, a Limited Partnership, Pavillion Nursing Center North, Inc.

Appeal of ST. JOHN'S GENERAL HOSPITAL, Dollar Savings Bank, Pavillion North, and Pavillion Nursing Center North, Inc.

Nos. 88–3700, 88–3748 and 88–3749.

United States Court of Appeals,
Third Circuit.

Argued March 28, 1989.

Decided May 24, 1989.

Richard DiSalle (argued), Susan H. Malone, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., John B. Nicklas, McCrady & Nicklas, Pittsburgh, Pa., for appellant, St. John's General Hosp.

Thomas J. Dempsey (argued), Pittsburgh, Pa., for appellants, Dollar Savings Bank, Pavillion North, and Pavillion Nursing Center, North, Inc.

Charles D. Sheehy Acting U.S. Atty., Bonnie R. Schlueter (argued), Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge, BECKER and NYGAARD, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

The Hill–Burton Act of 1944, 42 U.S.C. § 291 *et seq.*, was enacted to provide federal funds for state agencies to help fund the construction of public and non-profit medical facilities. The Act provides that if such a facility is transferred to an entity not qualified to apply for Hill–Burton grant assistance within 20 years after construction is completed, the government may seek to recover the funds from either the transferor or the transferee. 42 U.S.C. § 291i. These appeals stem from the efforts of the United States to recover Hill–Burton funds used to construct a non-profit medical facility which was subsequently sold to a for-profit venture. The district court granted the government's motion for summary judgment against appellants St. John's General Hospital, Dollar Savings Bank, Pavillion North, and Pavillion Nursing Center North, Inc., and awarded it a portion of the Hill–Burton grant money. Following a non-jury trial, the court also held that St. John's was not obligated to indemnify the other defendants.

Appellants contest the grant of summary judgment in favor of the United States. In addition, Dollar Savings, Pavillion North and Pavillion Nursing Center have appealed from the dismissal of their indemnity claims against St. John's. Appellants claim numerous errors with respect to the liability and indemnification issues. For the reasons that follow, we reject all of these arguments and will affirm the judgments of the district court.

## I. FACTS

On May 23, 1963, the Surgeon General approved St. Johns's application for a Hill–Burton grant in the amount of $352,000 to fund construction of a diagnostic and emergency facility in the North Hills area of Pittsburgh. The facility failed and ceased operation on December 31, 1965. On July 2, 1969, the facility was transferred to Ex-tend–A–Care Nursing Home Inc, a for-profit entity. Extend–A–Care financed the purchase in part with the proceeds of a loan from Dollar Savings Bank secured by a mortgage. At the time of this transaction, Pennsylvania's Hill–Burton program was being administered by George Kuchta, the Director of the Bureau of Medical Facilities for the Commonwealth of Pennsylvania's Department of Public Welfare. Anticipating the sale, Kuchta advised St. John's that it must escrow $352,000 to fund any recovery by the United States under the Hill–Burton Act. St. John's then placed $352,000 from the sale of the North Hills facility into a separate account.

Over the next few years, St. John's and Kuchta negotiated over the amount the government was entitled to recover under the Act. On March 10, 1970, Kuchta submitted a report to the federal program director for Hill–Burton proposing the appropriate amount of the refund to be $319,034.11. On February 18, 1972, Kuchta informed St. John's that the federal government had fixed $319,043.11 as the amount to be refunded. St. John's subtracted the facility's operating losses from this amount and estimated the government's recovery to be $241,078.46. In November, 1972, the Department of Health, Education and Welfare rejected the hospital's figures, and in a letter dated December 5, 1972, Kuchta demanded payment in the amount of $319,034.11.

During the course of these negotiations, St. John's used the money from the escrow account to purchase a non-profit alcohol and drug rehabilitation center. St. John's claims that it did so based on the assurances of Kuchta that the Hill–Burton grant money would not have to be repaid since the alcohol and drug center would substantially duplicate the purpose of the defunct North Hills facility. St. John's acquired the center on October 17, 1972.

When St. John's sold the North Hills facility to Extend–A–Care, Dollar Savings obtained title insurance from Union Title Guaranty Company. Its title search did not reveal the government's Hill–Burton

claim, nor St. John's escrow account. App. of Dollar Savings Bank at 351. In 1970, the bank foreclosed on its mortgage and on February 4, 1972, conveyed the property to Pavillion North, a limited partnership. As part of the transaction, Lawyers Title Insurance Corporation performed a title search on behalf of Pavillion North, and discovered that the United States had a potential claim to recover the Hill–Burton funds. Lawyer's Title questioned Kuchta concerning the Hill–Burton grant. Kuchta responded in a letter dated January 26, 1972 that the government's right of recovery did not affect property title. When Union Title became aware of the Hill–Burton grant, it contacted St. John's concerning a possible claim by the government. St. John's responded in a letter dated February 3, 1972 that while St. John's disputed the federal claim, it had "[taken] action following the sale of the Diagnostic and Emergency Center to earmark and set aside in a separate account out of the purchase price the amount of money received from the government". App. of Dollar Savings Bank at 708. The facility was leased to Pavillion Nursing Center North, a for-profit corporation, on October 31, 1972.

In 1981, the Department of Health and Human Services made three demands upon St. John's to refund the Hill–Burton funds. St. John's made no payments and on May 19, 1983, the government filed this action against St. John's, Extend–A–Care, Dollar Savings, Pavillion North, and Pavillion Nursing Center North. Defendants denied that they were obliged to repay the Hill–Burton funds and raised several affirmative defenses, including statute of limitations, waiver, laches and estoppel. In addition, Extend–A–Care, Dollar Savings, Pavillion North and Pavillion Nursing Center North filed cross-claims against St. John's for indemnity. Both sides filed motions for summary judgment. On October 29, 1985, the district court granted the government's motion and entered judgment against all defendants jointly and severally for $319,-034.11. The order was later modified to include prejudgment interest at the rate of 10.93% per annum from August 17, 1984. The court denied the indemnity claims on

September 29, 1988 following a non-jury trial. These timely appeals followed.

## II. ANALYSIS

### A. *Hill–Burton Issues*

Appellants contest the grant of summary judgment in favor of the United States on its Hill–Burton claim. They argue that the government's right of recovery is barred by the six-year statute of limitations, 28 U.S.C. § 2415, and the doctrines of estoppel, waiver and laches. In addition, Dollar Savings, Pavillion North and Pavillion Nursing Center North contend that the recovery provisions of the Hill–Burton Act do not apply to them since they are not "transferees" within the meaning of 42 U.S.C. § 291i. Appellants also object to the award of prejudgment interest.

Our standard of review in an appeal from a grant of summary judgment is plenary. *Joseph v. Hess Oil*, 867 F.2d 179, 181 (3d Cir.1989). Summary judgment is proper if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* at 182; Fed.R.Civ.P. 56(c).

### (i) Statute of Limitations

█ Our initial task is to determine what limitations period, if any, applies to actions brought by the government pursuant to the Hill–Burton Act. The district court held that the government's claim was not barred by any applicable statute of limitations. Appellants argue that the six-year limitation periods contained in 28 U.S.C. §§ 2415(a) and (b) apply to bar the government's Hill–Burton claim. We agree with the district court that Congress intended to allow the government to seek recovery under the Act at any time.

█ The United States is exempt from the operation of statutes of limitations except where Congress has expressly consented to a time bar. *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938); *Glenn Elec. Co. Inc. v. Donovan*, 755 F.2d 1028, 1033 (3d Cir.1985). Since the Hill–Burton Act does not contain a limitations

period, the government can seek recovery at any time under the Act unless the general six-year limitation on actions by the United States applies, 28 U.S.C. § 2415. Section 2415(a) provides that every action for money damages brought by the United States "which is founded upon any contract express or implied in law or fact shall be barred unless the complaint is filed within six years after the right of action accrues ..." Subsection (b) applies the six-year limitation to actions by the government "to recover for diversion of money paid under a grant program" and actions "for conversion of property of the United States." Appellants assert that either one of these provisions is applicable to the government's Hill–Burton claim.

Appellants' primary argument is that a claim to recover Hill–Burton grant money after the facility ceases to be used on a non-profit basis is actually an action to recover "for diversion of money paid under a grant program," pursuant to Section 2415(b). They contend that the transfer of the physical facility is akin to a "diversion" of the grant money, since the funds are no longer being used for the purpose of constructing and maintaining a non-profit medical facility. Under this analysis, the government's right of action accrued on July 2, 1969, when the non-profit North Hills facility was transferred to Extend–A–Care, a for profit entity. Appellants also argue that an implied contract existed between St. John's and the United States when the Hill–Burton grant was made for the construction of the North Hills facility, and that consequently Section 2415(a) applies.

In making these arguments, appellants urge us to reject the decision of the Court of Appeals for the Fifth Circuit in *United States v. City of Palm Beach Gardens*, 635 F.2d 337 (5th Cir.1981), *cert. denied*, 454 U.S. 1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). In *Palm Beach Gardens*, the court held that Section 2415 does not apply to a

Hill–Burton claim. The court reasoned that the transfer of the facility did not constitute a diversion of the grant money within the meaning of Section 2415(b), since the funds were initially used for their proper purpose: the construction of a non-profit health care facility. The court also held that subsection (a) did not apply because the government's right of recovery under Hill–Burton is statutory rather than contractual. 635 F.2d at 340–41. Appellants argue that *Palm Beach Gardens* is inconsistent with the congressional purpose of the six-year limitation, which is to provide "some protection against an action by the government which arose from a transaction occurring many years previously ..." Report of the Comptroller General of the United States, *reprinted in* 1966 U.S. Code Cong. & Admin.News, 2502, 2514.

We agree with the *Palm Beach Gardens* court that Congress did not intend that any time limitation bind the United States when seeking recovery under the Hill–Burton Act. Our conclusion is supported by the legislative history of the Medicare and Medicaid Budget Reconciliation Amendments of 1983, H.R.Rep. No. 442, 98th Cong., 1st Sess, accompanying H.R. 4136, October 26, 1983.[1] The report of the House Committee on Energy and Commerce indicates that it was troubled by the ineffectiveness of the Hill–Burton recovery procedures. The report cited an audit conducted by the Inspector General of the Department of Health and Human Services, which concluded that the government was sustaining "substantial avoidable financial losses" because the Department of Health and Human Services failed to promptly identify the change in status of a health-care facility which would trigger a recovery of Hill–Burton funds. H.R. 98–442 at 57. The committee recommended amendments to the recovery provisions of the Hill–Burton Act which would better enable the government to enforce its rights under the Act.[2] The report also com-

---

**1.** H.R. 98–442 and H.R. 4136 were incorporated into H.R. 5394, per 130 Cong.Rec. 2814, 98th Cong., 2d Sess. H.R. 5394 was subsequently incorporated into H.R. 4170, which became the

Deficit Reduction Act of 1984, Pub.L. No. 98–369, Title III, § 2381(a), 98 Stat. 1112.

**2.** The committee report proposed three amendments to section 291i, two of which were enact-

mented on the applicability of any statutes of limitations on the government's right of recovery under Hill–Burton:

> The Committee notes in passing that the Hill–Burton Act contains no limit on the period during which the Federal government can seek to recover funds, and that no other statute of limitation applies to Hill–Burton recovery actions. It is the Committee's specific intent that the United States continue to be allowed to seek recovery under the Hill–Burton Act at any time after the right to recovery has arisen. *U.S. v. City of Palm Beach Gardens*, 635 F.2d 337 (5th Cir.1981). The fact that the Department of Health and Human Services is not aware that a Hill–Burton facility has, within 20 years of completion of construction, been sold, been transferred, or undergone a change in use, does not extinguish the Federal Recovery right.

H.R. 98–442 at 59.

This passage reveals that the Committee interpreted the Hill–Burton Act, as originally enacted, to exempt the government's right of recovery from all statutes of limitations, and that it would neither alter or amend the Act to include any limitation. We conclude that the district court correctly held that the government's cause of action under Hill–Burton was not time-barred.[3]

#### (ii) Estoppel and Waiver

Appellants contend that the government is estopped from recovering the Hill–Burton grant money because of a statement made in 1972 by George Kuchta, who administered the Hill–Burton program in Pennsylvania during this period. Accord-ing to appellants, Kuchta informed Harry J. Frederick, the administrator of St. John's Hospital, that St. John's could use the funds from the escrow account to purchase the alcohol and drug rehabilitation center and that the government would thus waive its right to recover the funds. Appellants submit that St. John's relied on Kuchta's statement when it used the funds from the escrow account to purchase the center. They further claim that there are genuine issues of material fact in dispute, thereby precluding the grant of summary judgment. We are not persuaded by these arguments.

■ In order to prevail on a traditional estoppel defense, a defendant must prove a misrepresentation upon which the defendant reasonably relied to his detriment. *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984); *United States v. Asmar*, 827 F.2d 907, 912 (3d Cir.1987). When estoppel is alleged against the United States, the defendant must also prove "affirmative misconduct" on the part of the government. *Asmar*, 827 F.2d at 912–13.

■ We have no testimony from Kuchta or Frederick concerning Kuchta's alleged misrepresentations, since they both died prior to the commencement of this action. The only evidence of Kutchta's statements is contained in the affidavit of Sidney S. Smith, the Secretary of St. John's, who averred that he was present at meetings of the hospital board of directors when Frederick informed them that Kuchta "assured [Frederick] that the Federal Government did not require St. John's Hospital to re-

---

ed, *see* H.R. 98–442 at 58–59. First, the bill required that the Secretary of Health and Human Services be notified in writing of the transfer within 10 days of the date of the sale. [now 42 U.S.C. § 291i(b)]. Second, the bill added a section which would grant the United States an interest penalty at a time commencing six months after the transfer of the facility. [now 42 U.S.C. § 291i(c)(2)]. Finally, the committee bill provided that the right of recovery shall constitute a lien on any Hill–Burton facility. H.R. at 59. Congress rejected this suggestion and specifically stated that the government's right of recovery "shall *not* constitute a lien" on any Hill–Burton facility. [now 42 U.S.C. § 291i(e)] (emphasis added).

3. Appellants alternatively argue that Section 2415(b) applies because when St. John's used the funds from the escrow account to purchase the drug and alcohol rehabilitation center on October 17, 1972, it "converted" the funds. We will not address this contention in light of our holding that actions by the government to recover Hill–Burton grant money are not governed by any statute of limitations.

turn any Hill–Burton funds to the Government." App. for St. John's at 84. Appellants also rely on the statements of John B. Nicklas, counsel for St. John's Hospital, who testified in deposition that Kuchta told Frederick that St. John's would not be liable if it used the segregated funds to purchase the alcohol and drug rehabilitation center. Nicklas based his knowledge on the "assurance that we [St. John's Hospital] had received through Mr. Frederick from the Department of Welfare that the Commonwealth of Pennsylvania that [the use of] these funds for the purchase of the [alcohol and drug rehabilitation] Center ... complied with the Hill–Burton Act." App. for St. John's at 125. This testimony, however, like the Smith affidavit, is not based on any written correspondence between Kuchta and Frederick; rather it is based on inadmissible hearsay. Such evidence is clearly inadequate to raise an issue of fact precluding a grant of summary judgment. *See* Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ...").

Furthermore, the written evidence offered by the government indicates that Kuchta did not represent to Frederick that the government would waive its rights to recover the Hill–Burton money. A letter from Kuchta to Frederick dated December 5, 1972 rejects St. John's request to refund a lesser recovery amount. App. for St. John's at 56. This is some six weeks after St. John's purchased the alcohol and drug rehabilitation center. Thus, the record is devoid of any reliable evidence that Kuchta misrepresented anything to St. John's. As such, appellants have not shown that the government is estopped from recovering the Hill–Burton grant money.

■ Appellants also attempt to use the same factual circumstances to invoke the waiver provisions of the Hill–Burton Act.

At the time this action was commenced in 1983, the relevant recovery provision provided:

If any facility with respect to which funds have been paid under section 291f of this title shall, at any time within twenty years after the completion of construction—

(a) be sold or transferred to any person, agency or organization (1) which is not qualified to file an application under section 291(e) of this title, or its successor, or

(b) cease to be a public health center or a public or other nonprofit hospital, outpatient facility, facility for long term care, or rehabilitation facility, *unless the Surgeon General determines, in accordance with regulations, that there is good cause for releasing the applicant or other owner from this obligation,* the United States shall be entitled to recover from either the transferor or the transferee (or, in the case of a facility which has ceased to be public or nonprofit, from the owners thereof) an amount bearing the same ratio to the then value (as determined by the agreement of the parties or by action brought in the district court of the United States for the district in which the facility is situated) of so much of the facility as constituted an approved project or projects, as the amount of the Federal participation bore to the cost of the construction or modernization under such project or projects. . . .

42 U.S.C. § 291i, Pub.L. 91–296, Title I, § 116(d), 84 Stat. 342 (1970) (amended 1984) (emphasis added).

Here, the government based its complaint on subsection (a), alleging that the transfer to Extend–A–Care in 1969 entitled it to recover the grant money since Extend–A–Care was an entity not qualified to receive Hill–Burton assistance.[4] Appellants contend that the waiver provision set

---

**4.** Defendants do not argue that the transfer to Extend–A–Care also fits within subsection (b). The distinction between the two subsections is that subsection (a) applies "where the recipient of the Hill–Burton funds transfers its facility to ineligible private hands. Section [291i(b)] applies where the recipient retains the facility but converts its use to ineligible purposes." *United States v. Coweta County Hospital Authority,* 777 F.2d 667, 669 (11th Cir.1985). Here, the transfer from St. John's to Extend–A–Care clearly falls within subsection (a), since Extend–A–Care, a for-profit organization, is ineligible to receive Hill–Burton grants.

forth in subsection (b) also applies to actions brought under subsection (a). The district court held that it was unreasonable for appellants to rely on this waiver provision because, before the 1984 amendment, "waiver of the recovery provision of the [Hill–Burton Act] was available only in the case where a facility *ceased its existence* as a public health facility under § 291i(b) and not where it was merely sold or transferred to a nonqualifying entity under § 291i(a)." Dist. Court. Op. at 9 (emphasis in original).[5]

The Court of Appeals for the Eleventh Circuit addressed this precise issue in *United States v. Coweta County Hospital Authority*, 777 F.2d 667 (11th Cir.1985). It held that the statutory provision for waiver of liability in subsection (b) applies to liability based upon that subsection only and not on subsection (a). The court explained Congress' purpose in not including a waiver provision in subsection (a):

> If Congress had intended the "good cause" waiver to apply in all cases it would not have needed to set forth two separate types of liability. Instead, Congress could have provided for liability any time a facility is no longer used as a public or nonprofit hospital and authorized a waiver of this liability for good cause. Rather than doing so, Congress elected to set forth two separate types of liability.

777 F.2d at 669.[6]

We are persuaded by the reasoning of the court in *Coweta County Hospital.* The 1984 amendment, for the first time, established a "good cause" waiver for transfers to for-profit entities pursuant to subsection (a). The fact that waiver under subsection (a) employs a different procedure than (b) does not mean that there was a preexisting power of waiver for actions based on subsection (a). Thus, we decline to apply the waiver provisions of the Act to the instant case.

#### (iii) Laches

■ Appellants next argue that they may not be able to refute the government's evidence on their waiver and estoppel claims because Kuchta, Frederick and other members of the board of St. John's are deceased. They claim that the doctrine of laches should bar the government's action "due to the passage of time between the grant and formal collection proceedings" initiated by the government. Brief for St. John's at 19. It is well established that the United States is not subject to the defense of laches in enforcing its rights. *United States v. Summerlin*, 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *United States v. Gera*, 409 F.2d 117, 120 (3d Cir.1969). *See also United States v. Popovich*, 820 F.2d 134, 136 (5th Cir.1987) (laches may not be asserted against the United States when it is acting to enforce a public right or protect the public interest), *cert. denied* — U.S. ——, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). Thus, it is clear that defendants cannot assert the defense of laches in this case.

#### (iv) Liability Arising from Subsequent Transfers

■ Appellants Dollar Savings, Pavillion North and Pavillion Nursing Center, North

---

5. The amendment enables a defendant to claim a waiver pursuant to actions commenced under subsection (a) [now Section 291i(a)(1) ] only if the Secretary determines that the transferee has established an irrevocable trust in an amount calculated in accordance with the statute, and that the transferee will meet certain obligations of the transferor. 42 U.S.C. § 291i(d)(1).

6. The committee report for H.R. 98–442 supports this conclusion. The committee's first proposed amendment to the Act did not include a waiver provision for actions arising under subsection (a). The committee went on to state its view that the original legislation did not apply to subsection (a) transfers:

> The Committee bill also clarifies the long standing statutory policy that the Secretary is authorized to waive recovery for good cause (in accordance with regulations) only in cases where there has been a change in use—that is, where a Hill–Burton facility ceases to be a public health center or public or private nonprofit hospital, outpatient facility, or rehabilitation facility—not where a facility has changed its sponsorship from public or private nonprofit to proprietary.

H.R. 98–442 at 59. The waiver provision for subsection (a) transfers was subsequently included in the final version of the bill.

claim that the language of Section 291i clearly states a congressional intent that only the original grantee of the Hill–Burton funds and its transferee can be held liable to the government for the return of the money. Applying their theory to these facts, only St. John's and Extend–A–Care would be liable, since St. John's was the grantee of the funds and Extend–A–Care was the initial transferee of the North Hills facility in 1969. The government responds that the recovery scheme of the Hill–Burton Act is intended "to insure that facilities for which federal funds were used would remain public and non-profit for a full twenty years after construction was completed." *United States v. Brady*, 385 F.Supp. 1347, 1350 (S.D.Fla.1974). We agree with the government that the Act applies to all transferors and transferees.

In *Brady*, the district court reasoned that "[i]f subsequent transfers were to be immunized from liability, there would be no incentive to maintain the facility on a public or non-profit basis after title had left the hands of the original grantee." *Id.* This logic is particularly compelling in this case, where four subsequent transferees have received the benefits of a facility built with government funds.

Appellants further argue that, as subsequent transferees, it is unreasonable to charge them with actual or constructive notice of the government's potential Hill–Burton claim. The facts do not support appellants' claim. The record reveals that Pavillion North and Pavillion Nursing Home North had actual notice of a Hill–Burton claim in 1972, when the title search performed by Lawyers Title Insurance Corporation disclosed the Hill–Burton grant. It is unfortunate that the title search performed on behalf of Dollar Savings by Union Title Company did not find the Hill–Burton grant. Nonetheless, Dollar Savings had constructive notice. As was noted by the court in *Brady*, "the Hill–Burton Act is not an obscure piece of legislation." 385 F.Supp. at 1351. With any legislative

enactment which affects substantial rights, "a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982). The president of Union Title, John H. Kunkle, testified that he was aware of the Hill–Burton Act, and that when conducting a title search involving a hospital it was normal practice to inquire about possible Hill Burton liability. App. of Dollar Savings Bank at 661. When asked why Union Title's search did not uncover the Hill–Burton grant, Kunkle indicated that somehow a mistake was made. *Id.* at 662.[7] Thus, the claim of Dollar Savings that it did not have adequate notice of the government's claim is also without merit.

### (v) Prejudgment Interest

■ Appellants next challenge the award of prejudgment interest to the government. In its order of October 29, 1985 granting the government's motion for summary judgment, the district court did not award prejudgment interest. The court reasoned that the government shared some of the blame for the delay in recovering the Hill–Burton funds. On September 29, 1988, the district court granted a government motion to amend its earlier order to include prejudgment interest at a rate of 10.93% per annum from August 17, 1984. In its opinion the court stated that the amendment to Section 291i mandated prejudgment interest.

The Deficit Reduction Act of 1984, Pub. L. 98–369, Title III, § 2381(a), 98 Stat. 1112, amended Section 291i of the Hill–Burton Act to provide for prejudgment interest. Section 291i(c)(2)(A) provides, in pertinent part:

> After the expiration of—
> (ii) thirty days after July 18, 1984, or if later 180 days after the date of the sale, transfer, or change of use for which a

---

7. A letter from Kunkle to John B. Nicklas, counsel to St. John's, dated February 7, 1972 states: For many years we have considered Hill–Burton funds from an academic standpoint, and to my knowledge this is the first time we have had to consider them from a purely practical approach.
App. for Dollar Savings Bank at 709.

notice is required by subsection (b) of this section, in the case of facility which was sold or transferred or the use of which changed before July 18, 1984.

the amount which the United States is entitled to recover under paragraph (1) with respect to a facility shall be the amount prescribed by paragraph (1) plus interest, during the period described in subparagraph (B) ...

The applicable period in subparagraph (B) is the period beginning

(i) in the case of a facility which was sold or transferred or the use of which changed before July 18, 1984, thirty days after such date or if later, 180 days after the date of the sale, transfer or change of use for which a notice is required by subsection (b) of this section ...

and ending on the date the amount the United States is entitled to under paragraph (1) is collected.

Appellants argue that the above provisions are inapplicable here. They contend that the time period for the calculation of prejudgment interest only runs from dates of sales or transfers or changes of use "for which a notice is required by subsection (b) of this section." The notice provision referred to by the statute requires that the Secretary of Health and Human Services be notified in writing of any transfer within 10 days. 42 U.S.C. § 291i(b). The transfer in this case took place before the notice requirement was added to the statute in 1984. Appellants conclude that if Congress had intended that prejudgment interest be recoverable, it should have provided that the interest be calculated to run from the date of the transfer regardless of whether there was a notice requirement at that time. We disagree.

Appellants' reading of the statute would render the clause "in the case of a facility which was sold or transferred or the use of which changed before July 17, 1984" meaningless. By this language Congress authorized the government to recover prejudgment interest for transfers before the effective date of the 1984 amendments. The reference to the notice provision does not change the general scheme of the interest

provision, which is to delay accrual of interest for a period of 180 days following the transfer regardless of whether the transfer occurred before or after July 18, 1984. *See* 42 U.S.C. § 291i(c)(2)(A)(i) (interest accrues "[a]fter the expiration of 180 days after the date of sale, transfer, or change in use ... in the case of a facility which is sold or transferred or the use of which changes after July 18, 1984 ..."). The only limitation for transfers occurring before July 18, 1984 is that interest cannot begin to accrue before August 17, 1984. Thus, we will not disturb the award of interest by the district court.

## B. *Indemnification*

■ Having found that all appellants are liable to the United States to refund the Hill–Burton grant money, we next consider whether St. John's is required to indemnify Dollar Savings, Pavillion North, and Pavillion Nursing Center North, Inc. [hereinafter "cross-claimants"]. Following a nonjury trial, the court issued findings of fact and conclusions of law in which it denied the indemnity claims. We agree with the district court that indemnity is not appropriate in this case.

A federal appellate court may set aside a trial court's findings of fact only if they are clearly erroneous. Fed.R.Civ.P. 52(a). " '[I]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, [a] court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' " *Amadeo v. Zant*, 486 U.S. 214, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988), citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 4511–12, 84 L.Ed.2d 518 (1985).

Since the Hill–Burton Act itself does not limit liability or require indemnification, cross-claimants argue that an implied contract of indemnity exists between themselves and St. John's in the event they are liable to refund the Hill–Burton grant to the government. Under Pennsylvania law, a right of indemnity based upon implied contract exists only if we determine that,

as between St. John's and the cross-claimants, St. John's was primarily responsible to pay the judgment in favor of the government. *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc.,* 510 Pa. 1, 507 A.2d 1, 14 (1986); *see also Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 371 (1951) (indemnity may rest "upon a fault that is imputed or constructive only, being based upon some legal relation between the parties, or arising from some positive rule of common statutory law ...").

We have already determined that all subsequent transferors and transferees are liable under the recovery provisions of the Act. *United States v. Brady, supra.* Thus, concepts of primary and secondary fault, which are both founded in tort, are not applicable here. *See Philadelphia Electric Company v. Hercules, Inc.,* 762 F.2d 303, 318 (3d Cir.1985) ("There can be no indemnity as between parties that each bear primary responsibility for a wrong, regardless of their relative degrees of fault."), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). Any notion of an implied agreement to indemnify would be inconsistent with the purpose of the Act, which is to insure that the facility be operated on a not-for-profit basis for a period of at least 20 years following the completion of construction. Absent an express contract, the cross-claimants have no indemnification remedy against St. John's.

Cross-claimants also contend that there are other "equitable circumstances" which entitle them to indemnification, namely that St. John's was unjustly enriched at their expense when it used the funds earmarked for repayment of the Hill–Burton grant to purchase the alcohol and drug rehabilitation center. This argument is merely a variation of their implied contract theory as it would entail the finding of a quasi-contractual relationship between St.

John's and the subsequent transferees. *See, e.g. Hershey Foods Corp v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987). To sustain a claim for unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully or passively received a benefit that would be unconscionable for the party to retain without compensating the provider. *Hershey Foods Corp.,* 828 F.2d at 999; *see also Torchia on Behalf of Torchia v. Torchia,* 346 Pa.Super. 229, 499 A.2d 581, 582–83 (1985). The circumstances here clearly establish that there was no unjust enrichment. Cross-claimants had either actual or constructive notice of the government's claim at the time of each transfer. While St. John's did notify Union Title of the escrow account in its letter of February 3, 1972, it did not indicate that it would be responsible for repayment of the claims. Cross-claimants took possession of the property knowing that the government would seek repayment of the grant. Cross-claimants simply have no facts to support their claim that it was unconscionable for St. John's to acquire the alcohol and drug rehabilitation center with the funds from the escrow account.[8]

## III. CONCLUSION

The district court's grant of summary judgment in favor of the United States will be affirmed. The order of the district court denying the cross-claims of Dollar Savings Bank, Pavillion North, and Pavillion Nursing Center North, Inc. will be affirmed.

---

**8.** Cross-claimants also request that a new trial be granted on their indemnification claims, stating that the district court misunderstood the differences between implied contract and quasi-contract. This too will be denied. The existence of an implied contract presupposes some type of agreement, while quasi-contract is based on concepts of unjust enrichment and equity. *Hershey Foods Corp.,* 828 F.2d at 999. Here, the district court properly concluded that there was no agreement to indemnify and that St. John's was not unjustly enriched at the expense of the cross-claimants.