MICHAEL, Circuit Judge, dissenting.
Tracy Turner, who was in jail with Earl Bramblett, testified at Bramblett’s capital murder trial that Bramblett had confessed to murdering the entire Hodges family. Turner’s testimony was the only direct evidence against Bramblett, who was convicted and sentenced to death. Turner now swears by affidavit that his testimony about Bramblett’s confession was a total lie. According to Turner, he fabricated the confession with the help of a Special Agent of the Virginia State Police, who fed him the known details of the Hodges murders. The majority assumes that Turner’s testimony was fabricated, but concludes that Bramblett was not prejudiced because the circumstantial evidence was more than sufficient to convict. The majority also affirms the district court’s denial of Bramblett’s request for an evidentiary hearing. I respectfully dissent. Turner’s testimony about Bramblett’s confession could have affected the jury’s decision to convict. If the testimony was false as Turner now claims, that would be enough to grant the writ of habeas corpus. I would therefore vacate the order denying the writ and remand the case for an evidentiary hearing to determine whether Turner gave perjured testimony at Bramblett’s trial.
I.
Bramblett’s claim that the prosecution violated Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), by allowing a state witness to perjure himself, is a form of a Brady claim. See Strickler v. Greene, 527 U.S. 263, 280-81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Kyles v. Whitley, 514 U.S. 419, 432-33, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. *17 2392, 49 L.Ed.2d 342 (1976).[1] Bramblett’s inability to raise the Napue issue prior to his state habeas proceeding leaves it procedurally defaulted, and he must show cause and prejudice to prevail at this stage. See Strickler, 527 U.S. at 282. I believe he has done both. He has, of course, shown cause. Bramblett was only able to raise this issue once Turner, the confessed perjurer, decided to come clean to Bramblett’s state habeas lawyers. Bramblett’s default (failing to raise the issue on direct appeal) was due to the prosecution’s concealment of its use of the perjured testimony. That excuses the default. Amadeo v. Zant, 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988).
Bramblett has demonstrated prejudice if there is “any reasonable likelihood that the false testimony could have affected the judgment of the jury.” Kyles, 514 U.S. at 433 n. 7 (internal quotation marks omitted). Courts view blatant prosecutorial misconduct as serious business, and the prosecution’s knowing use of perjured testimony is more apt to be considered prejudicial. See id.; see also Agurs, 427 U.S. at 103-04; Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (noting that the use of perjury “by a State to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation”). A petitioner asserting a run-of-the-mill Brady claim — that the prosecution failed to turn over information that would have been helpful to the defense — must show “a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.” Kyles, 514 U.S. at 433-34 (internal quotation marks omitted). On the other hand, a petitioner asserting that the prosecution knowingly used perjured testimony need only show “any reasonable likelihood that the false testimony could have affected the judgment of the jury.” Kyles, 514 U.S. at 433 n. 7 (internal quotation marks omitted).
The majority concludes that because “the circumstantial evidence was more than sufficient to convict,” there is no reasonable likelihood that Turner’s perjured testimony could have affected the judgment of the jury. Ante at 15. If Turner’s affidavit is true, however, it suggests that the police officer went well beyond encouraging misleading or exaggerated testimony and instead fed Turner enough details of the murder investigation to allow him to fabricate a believable confession that he attributed to Bramblett. This allegedly manufactured confession at minimum reinforced the jury’s determination of guilt. At worst, it removed justifiable doubts the jury could have had about the strength of the circumstantial evidence. Turner’s perjured testimony could therefore have affected the judgment of the jury.
The circumstantial case against Bramblett was fairly strong, but it was far from airtight. If only the circumstantial evidence had been presented, reasonable jurors could have had real doubts about convicting Bramblett. This is because many of the individual pieces of circumstantial evidence could be explained away or at least minimized. First. Bramblett drove a white pickup with a dark tailgate, *18 and Dorothy McGee testified that she saw a pink or red pickup with a dark tailgate pass her in the vicinity of the Hodges home in the early morning hours after the murders. Ante at 3; J.A. 358-59. The prosecution sought to demonstrate through reenactments that a white truck would have looked pink or red under early morning lighting conditions. J.A. 359-66. Jurors, however, could have reasonably doubted the authenticity of the reenactments or simply could have concluded that the white truck used in the reenactments did not look pink or red. Second. The murder weapon was never conclusively identified, and expert testimony that unfired bullets found at the murder scene and among Bramblett’s belongings came from the same melt (or lot) appears less important than the prosecution claimed. Jurors could have believed that more than one person in the same town might have gone to the local store and bought ammunition that came from the same lot. Third. The only physical evidence linking Bramblett to the crime scene was the single pubic hair, matched to him through DNA, that was discovered in Anah and Winter’s bed, where their bodies were found. Ante at 3-4; Trial Tr., Vol. 78, at 74-75. Bramblett was a frequent visitor to the Hodges household. Thus, the hair could have been blown into the bed by the large fans used by firefighters or by air coming through an open window. Trial Tr., Vol. 70, at 130, 156-57, 168. This was possible because it does not appear that the bodies were covered immediately to protect the crime scene, Trial Tr., Vol. 70, at 132, 157; and, in any event, at some point in the hours after the fire, the cover was removed for a considerable period of time, Trial Tr. Vol. 73, at 22. Fourth. Bramblett’s statements to the police that he thought he would be arrested for the murder, made before the police told him the Hodgeses had been murdered, Trial Tr., Vol. 73, at 13-14, are consistent with his delusions that the police were using the Hodges family to entrap him. Trial Tr., Vol. 78, at 98. Fifth. Despite the prosecution’s argument that Bramblett’s obsessions about Winter were the motive for the crime, Trial Tr., Vol. 78, at 97, the prosecution presented no evidence that Winter or her sister was sexually assaulted by Bramblett the night of the murders or on any other occasion. Sixth. The prosecution never fully explained how Bramblett could have killed Mr. Hodges several hours before he killed the rest of the family when Bramblett was with Mrs. Hodges and the two girls for several hours between the time Mr. Hodges was murdered and the time the other three were murdered. A witness who saw the group together believed nothing was amiss; Mrs. Hodges even spoke to the witness privately and expressed no concern about her or her family’s safety. Trial Tr., Vol. 71, at 185.[2] In sum, without Turner’s testimony that Bramblett told him the details of the Hodges murders and ultimately confessed to committing them, the Commonwealth would have been left with only the circumstantial case, a case that was not without some holes.
Moreover, if Turner’s current story is true, the degree of deceit practiced by the prosecution raises the question of whether it believed that its circumstantial case was sufficient to prove Bramblett’s guilt be *19 yond reasonable doubt. The Commonwealth argues to us that its case against Bramblett was so strong that a fabricated confession would not have affected the jury’s assessment. Yet Turner’s affidavit, if true, suggests that the Commonwealth believed that it needed to manufacture evidence of incriminating statements by Bramblett to ensure a conviction. An examination of Turner’s affidavit and his detailed claims about the prosecution’s efforts to engineer his false testimony lends strength to Bramblett’s claim that Turner’s testimony was quite prejudicial.
According to Turner, he was made a trustee (or trusty) shortly after he was incarcerated at the Roanoke County Jail in 1996. J.A. 13, ¶ 3. If he could retain trustee status, he would “get a lot of time off [his] original sentence.” J.A. 14, ¶ 7. He lost this status, however, when he was found with contraband, a pack of cigarettes. J.A. 13, ¶¶ 3-5. Turner’s contraband violation led to his reassignment to a different floor, where he met Bramblett. Bramblett told Turner he was worried because the police had found some shells that the prosecution was seeking to connect to the Hodges murders. J.A. 13, ¶¶3-5. Turner passed this information on to his arresting officer, who was in Vinton, Virginia, where the Hodgeses had been murdered. J.A. 13, ¶ 6. The State Police sent Agent Barry Keesee to see Turner the next day, and that meeting was the first of eight or nine meetings the two would have. J.A. 14, ¶ 6. At the first meeting Turner told Keesee that he was seeking a return to trustee status; Keesee replied that he would probably be able to arrange that. J.A. 14, ¶ 9, Immediately afterwards, Keesee began to feed Turner details of the investigation into the Hodges murders. J.A. 14, ¶ 9. During Keesee’s visits Turner would begin by telling Keesee what Bramblett had said about the case. (These statements, Turner now says, were never inculpatory.) J.A. 15,¶ 12. Keesee would then provide Turner details of the investigation that were new to Turner; and, once Keesee had turned on his tape recorder, Turner would weave these new facts into fabricated accounts of statements attributed to Bramblett. J.A. 14, ¶¶ 10, 12-13. Turner also explained in his affidavit that he did not take notes during his conversations with Bramblett, nor did Keesee ever ask him to do so, J.A. 15, ¶ 11. Turner claims that the two prosecutors, who met with him to prepare his testimony, asked him to write down what he said he had heard from Bramblett so that he could testify that he had made notes of his conversations with Bramblett as they occurred. J.A. 17-18, ¶ 25.
Although restoration of his trustee status was Turner’s primary goal, he was also seeking admission to a drug treatment program. J.A. 15-16, ¶ 16. Keesee told Turner that they had to resolve the Hodges case before they could discuss a treatment program. J.A. 16, v 16. Feeling pressured to provide more incriminating evidence, Turner says he told Keesee that Bramblett confessed that when Mrs. Hodges caught him with one of the girls, he “choked the life” out of Mrs. Hodges and then “took care of business” with the girls and Mr. Hodges. J.A. 15, ¶¶ 15, 16. Turner testified at Bramblett’s trial that Bramblett made that confession to him. Turner now swears that “Bramblett never said anything to [him] to indicate, expressly or implicitly, that he had anything to do with any of the Hodges’ deaths.” J.A. 15, ¶ 15.
Turner’s affidavit also alleges that he did in fact receive favorable treatment in exchange for his testimony against Bramblett. His trustee status was restored. J.A. 17, ¶ 23. Moreover, he says that he was permitted to attend a county auction without a guard and to return to the jail *20 late with no penalty. Such treatment, he explained, is unheard of for someone serving a twenty-seven year sentence. J.A. 17 ¶ 22. Finally, a reconsideration hearing on his sentence was scheduled prior to the Bramblett trial, but the hearing was purposely delayed until Turner had testified against Bramblett. J.A. 16,¶ 18. When Turner’s hearing was finally held, one of the prosecutor’s in Bramblett’s case represented the Commonwealth. The prosecutor advised the court of Turner’s assistance in the Bramblett case, and “240 days of misdemeanor time” were suspended from Turner’s sentence. J.A. 18, ¶ 29.
If Turner is now telling the truth that he made up Bramblett’s confession with the assistance of Agent Keesee, there is a reasonable likelihood that Bramblett suffered prejudice. Given the questions raised by the circumstantial case, Turner, the only witness who gave direct evidence (the confession) linking Bramblett to the murders, could have had a powerful effect on how the jury saw the entire case, especially the circumstantial evidence. See Kyles, 514 U.S. at 435 (noting that a petitioner may demonstrate a Brady violation “by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict”). At trial the prosecution acknowledged the importance of Turner’s testimony. In his closing a prosecutor noted that this was one of the few pieces of direct evidence Jinking Bramblett to the murders, J.A. 526, and it is by far the most damaging. Turner’s importance to the prosecution was further underscored by the Commonwealth’s choice to conclude the presentation of its case with Turner’s testimony and to recap Turner’s testimony at the end of its closing argument. Finally, as discussed above, if Turner is telling the truth now, the lengths to which the prosecution went to manufacture a confession indicate that Turner’s testimony was critical to the prosecution’s case.
Turner’s testimony therefore provided a framework that allowed the jury to construe ambiguous circumstantial evidence in favor of guilt — a reasonable construction in light of Bramblett’s confession. With the confession there was less pressure on the jury to take a critical look at the circumstantial evidence; in other words, the inference of guilt was much easier to draw. Without the confession the jury would have been forced to confront the weaknesses in the prosecution’s case. Turner’s allegedly false testimony — that Bramblett confessed to the murders — turned a hard job into an easy job for the jury. There is thus a reasonable likelihood that Turner’s false testimony could have affected the judgment of the jury. Cf. Wilson v. Murray, 806 F.2d 1232, 1238 (4th Cir.1986) (finding prejudice from the admission of an improperly obtained confession where the evidence “was not overwhelming and the confession undoubtedly had a substantial effect on [the] conviction”). If Turner committed perjury, Bramblett was prejudiced as a result.
II.
The next question is whether Bramblett is entitled to an evidentiary hearing to determine whether Turner manufactured the confession. To receive a hearing, Bramblett must (1) allege facts that, if true, would entitle him to relief, (2) overcome 28 U.S.C. § 2254(e)(2)’s limitations on the availability of an evidentiary hearing, and (3) establish one of the six factors mentioned in Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Fullwood v. Lee, 290 F.3d 663, *21 680-81 (2002).[3] To begin with, Bramblett’s factual allegations, if true, establish a meritorious Napue claim, thus entitling him to relief. As noted above, a claim that the prosecution violated Napue by presenting perjured testimony is a form of a Brady claim. See e.g., Strickler, 527 U.S. at 280-81. A Brady claim has three components: (1) the disputed evidence must be favorable to the accused, (2) that evidence must have been suppressed by the prosecution, and (3) prejudice must have ensued. Strickler, 527 U.S. at 281-82. Assuming Turner’s affidavit is true, Bramblett has met this test. First, the fact that Bramblett did not make the alleged incriminating statements is favorable to him. The fact that the prosecution appeared to have sufficient doubts about its case that it sought to manufacture testimony is also favorable to Bramblett. Second, if Turner’s affidavit is true, the Commonwealth manufactured evidence against Bramblett and suppressed this fact. Third, as I discuss in part I, Turner’s trial testimony, if perjured, was prejudicial to Bramblett.
Next, 28 U.S.C. § 2254(e)(2) does not bar Bramblett from receiving an evidentiary hearing. This section, of course, places a heavy burden on petitioners seeking evidentiary hearings when they have “failed to develop the factual basis of a claim in State court proceedings.”[4] 28 U.S.C. § 2254(e)(2). Bramblett, however, cannot be said to have “failed to develop the factual basis of [his] claim” in state court. He had no chance to develop it. Bramblett raised his Napue claim in his state habeas petition, his first opportunity to raise it after he learned of Turner’s statement that he had perjured himself. Bramblett was denied an evidentiary hearing in state court, and he received no consideration of the claim there because it was procedurally defaulted under Slayton v. Parrigan, 215 Va. 27, 205 S.E.2d 680 (1974) (refusing to review on habeas a claim that could have been, but was not, raised at trial or on direct appeal). Bramblett’s inability to develop the facts, and allow the credibility of Turner’s story and recantation to be tested, did not stem from negligence or gamesmanship. Rather, it stemmed from the Commonwealth’s alleged suppression of its own wrongdoing in fabricating testimony. The prosecution’s success in keeping its malfeasance secret for a time made it impossible for Bramblett to raise his Napue claim soon enough to receive an evidentiary hearing in state court. Section 2254(e)(2) is not aimed at this sort of inability or failure, which is beyond the petitioner’s control, to develop the factual basis of a claim in state court. A petitioner has only failed to develop the facts within the meaning of § 2254(e)(2) *22 when “there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner’s counsel.” Williams v. Taylor, 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). As Williams v. Taylor makes clear, when the prosecution’s wrongdoing, rather than the petitioner’s negligence or oversight, is responsible for the failure to have an evidentiary hearing in state court, the defendant has not “fail[ed] to develop” the factual basis of the claim within the meaning of the statute. See id. at 434-35 (noting § 2254(e)(2) does not bar a hearing for a petitioner who failed to develop the basis for his claim in state court because “the prosecution concealed the facts”). Because Bramblett alleges that the Commonwealth manufactured false testimony and successfully hid this fact from him, the Commonwealth’s actions, rather than Bramblett’s, were the essential cause of the procedural default, and Bramblett did not fail through his own fault to develop the factual basis for his Napue claim in state court. Section 2254(e)(2), therefore, does not bar an evidentiary hearing for Bramblett.
Finally, Bramblett has satisfied Townsend if the merits of the factual dispute, that is, whether Turner committed perjury, were not resolved in state court. See Townsend, 372 U.S. at 313. Again, because the state court found his Napue claim to be procedurally defaulted, it did not make any factual findings relevant to this claim. Therefore, Bramblett has established one of the Townsend factors. Because Bramblett’s allegations of Turner’s perjury, if true, would establish a meritorious Napue claim — and entitle Bramblett to habeas relief — he should receive an evidentiary hearing. Cf. Beaver v. Thompson, 93 F.3d 1186, 1190 (4th Cir. 1996) (allowing an evidentiary hearing “when the petitioner alleges additional facts that, if true, would entitle him to relief’). I would therefore vacate the denial of the writ and remand the case for an evidentiary hearing in the district court to determine whether the allegations in Turner’s affidavit are true. Turner’s claim that he lied when he told the jury that Bramblett had confessed to the Hodges murders must be tested in an evidentiary hearing before Bramblett can be put to death. Again, I respectfully dissent.

. Although Bramblett alleges that a police officer, rather than the prose-cutors, had actual knowledge of his perjury, the officer's knowledge is imputed to the prosecution. Boyd v. French, 147 F.3d 319, 329-30 (4th Cir. 1998); see also Napue, 360 U.S. at 269 ("First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amend-ment.”) (emphasis added; internal citations omitted).

. A prosecution expert testified that a shell casing found in Bramblett's pickup had been fired from the revolver found near Mr. Hodges’s body. Bramblett argued at trial that the real murderer, who was an enemy of Mr. Hodges, tried to set up Bramblett by planting the shell casing in his truck. The jury could have rejected Bramblett’s argument on this point, but that still does not minimize the importance of the allegedly fabricated confession.

. The six Townsend factors are:
(1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.
Townsend, 372 U.S. at 313.

. When the petitioner has failed to develop the facts in state court, he is not entitled to an evidentiary hearing unless (1) his claim is based on a new rule of constitutional law that is retroactively applicable or (2) his claim is based on facts that could not have been discovered earlier through due diligence. § 2254(e)(2)(A). To get a hearing, the petitioner must also show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.” § 2254(e)(2)(B).