*413 SUHRHEINRICH, Circuit Judge.
As an appellate court, we are required to give due deference to the trial court’s factual findings. Because I believe the majority has conducted de novo review of the facts, I respectfully dissent.
A bedrock principle of appellate procedure is that “appellate eourt[s] ... do not reweigh the evidence presented below for the purpose of determining which scenario has the greater possibility of being true.” United States v. Navarro-Camacho, 186 F.3d 701, 707-08 (6th Cir.1999); cf. Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (“[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules”); United States v. Dotson, 49 F.3d 227, 229 (6th Cir.1995) (“A reviewing court accords great deference to a lower court’s independent determination of probable cause.”);
If the district court’s account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.
Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Moreover, “[tjhere is no de novo appellate review of factfindings and no intermediate level between de novo and clear error, not even for findings the court of appeals may consider sub-par.” United States v. Microsoft Corp., 253 F.3d 34, 117 (D.C.Cir.2001) (per curiam); see Amadeo v. Zant, 486 U.S. 214, 228, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988) (“The District Court’s lack of precision ... is no excuse for the Court of Appeals to ignore the dictates of Rule 52(a) and engage in impermissible appellate factfinding.”).
The majority correctly identifies the standard of review for a suppression hearing as clear error. See Inwood Labs., Inc., v. Ives Labs., Inc., 456 U.S. 844, 855, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). The Supreme Court has explained that the deference accorded to district courts “rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of witnesses and to weigh the evidence.” Id. Thus, “unless an appellate court is left with the ‘definite and firm conviction that a mistake has been committed,’ it must accept the trial court’s findings.” Id. (emphasis added) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)).
We are called on to review the evidence “in the light most likely to support the district court’s decision.” United States v. Braggs, 23 F.3d 1047, 1049 (6th Cir.1994) (emphasis added) (internal quotation omitted). Instead, the majority supplants the district court’s finding of reasonable suspicion by challenging the sufficiency of the facts and what was reasonable for the officers, and the district court, to determine, and attempts to divorce these facts from the time, place, and manner in which they occurred. The majority has imputed the officers with knowledge of the direction of the suspect vehicle’s travel simply because the officers had arrived at Esmonde Street via Quebec Road, and because dispatch broadcast the suspect vehicle’s direction of travel twice. In so doing, the majority ignores the fact that the officers were in fact unfamiliar with the area, and that the officers were on foot and out of earshot of the radio in their squad car at the time the second broadcast was made. The majority also concludes that a reasonably trained officer could not mistake a BMW for a Dodge Neon. Again, this con *414 elusion completely ignores the facts found by the district court. Not only was Jackson’s vehicle the only one traveling on Esmonde, but Officer Plumber reported that the suspect vehicle was “possibly a BMW” and “looks like a BMW.” (Emphases added.)
The specific facts articulated by the district court to sustain reasonable suspicion were (1) that Jackson was driving a green vehicle in the vicinity of the “buy bust” where the suspect had been last seen less than one minute earlier, (2) that Jackson’s vehicle was of comparable size to a BMW, (3) that Jackson’s green Dodge Neon was the only vehicle traveling on Esmonde Street at that time, and (4) that Jackson matched the racial description of the suspect. These are not, as the majority describes them, “meager” facts.
We have previously upheld a Terry stop where the suspect vehicle could not be described and the wrong vehicle was stopped due to a misunderstanding of the radio communication. See Houston v. Clark County Sheriff Deputy John Does 1-5, 174 F.3d 809, 813-14 (6th Cir.1999). The Seventh Circuit has found reasonable suspicion where (1) the defendant matched the racial description of the suspect, (2) the vehicle description was similar (a purple SUV with shiny rims), and (3) the defendant was stopped fifteen minutes after the shooting in an area eight blocks away. See United States v. Wimbush, 337 F.3d 947, 950 (7th Cir.2003). Similarly, the First Circuit has found reasonable suspicion to stop a defendant’s white Lexus even though the suspect’s vehicle was described as “a white or light colored late-model car, possibly a Buick or Oldsmobile.” United States v. Jones, 187 F.3d 210, 216-17 (1st Cir.1999) (emphasis added); see also Creighton v. Anderson, 922 F.2d 443, 450 (8th Cir.1990) (finding reasonable suspicion even though the defendant’s vehicle had a slightly different color and make from the suspect’s vehicle).
The majority focuses heavily on the discrepancies between the description of the vehicle and the direction of its travel as a basis for its reversal. However, “[t]he court cannot determine [whether] an officer had reasonable suspicion on the basis of a factor on which the officer did not actually rely.” United States v. Townsend, 305 F.3d 537, 541 (6th Cir.2002). The officers did not know that the suspect vehicle was in fact a BMW. The description supplied by Officer Plumber reported that there was a potential suspect in a green vehicle—“possibly a BMW”—traveling on Esmonde toward Quebec.[2] (Emphasis added.) Within twenty-five seconds of hearing the first dispatch broadcast, Officer Rogers, now on foot, saw a green vehicle approaching; it was on the same block as the reported suspect vehicle and was in fact the only vehicle traveling on Esmonde Street. Furthermore, other officers in the area also on foot were shouting at Officer Rogers to stop the oncoming green vehicle, indicating a joint consensus that they too believed the vehicle to be the suspect vehicle. See Braggs, 23 F.3d at 1049 (“Reasonable suspicion can be based upon police officers’ own observations or upon the collective knowledge of other officers.”).
Additionally, Officer Rogers was unfamiliar with the area because it was not his usual beat. As a result, he was unable to *415 make a split-second determination as to the vehicle’s direction. Under such circumstances, equipped with only a general description of the suspect vehicle and being unsure of the direction the suspect vehicle was traveling, Officer Rogers could not have dispelled his reasonable suspicion that Jackson’s vehicle was the suspect vehicle without stopping Jackson. Moreover, regardless of whether Officer Rogers knew what direction the suspect vehicle was traveling, the majority ignores the possibility that the vehicle could have easily changed direction. A vehicle’s direction of travel is not restricted to a fixed path, but rather is capable of being changed at a moment’s notice. Applying the majority’s logic more broadly, future suspects would be able to avoid detention, and subsequent arrest, by simply turning the wheel of their car and driving in the opposite direction.
The majority also focuses on the description of the suspect as a basis for reversal. However, following the broadcast of the suspect vehicle’s description, the officers’ focus switched from locating a person to locating a green vehicle. Applying common sense and considering the pragmatic nature of police searches, it was necessary for the officers to identify and stop a suspect vehicle before identifying the suspect. The obvious mobility of a vehicle and the reality that the officers would not likely get another chance to stop and investigate the suspect vehicle only added to the exigency. Despite the inconsistencies between the suspect’s reported clothing and hairline and Jackson’s actual physical characteristics, the unique circumstances that placed Jackson’s green vehicle—the only vehicle traveling on Esmonde—in the vicinity of the “buy bust” less than one minute after Officer Lohman’s initial observation of the suspect green vehicle firmly ground Officer Rogers’ reasonable suspicion. We have held that the police had reasonable suspicion to stop a suspect vehicle where the description of the defendant’s vehicle matched the suspect’s, and the stop could have produced evidence of a crime, even if the police did not have reasonable suspicion to believe that the defendant was the suspect. See United States v. Marxen, 410 F.3d 326, 331-32 (6th Cir.2005).
Minor mistakes, such as the description of a suspect vehicle, its direction of travel, or a suspect’s clothing, do not automatically vitiate an officer’s finding of reasonable suspicion. See Houston, 174 F.3d at 814. Law enforcement officers are “regularly forced to make critical decisions under extreme pressure.” Pray v. City of Sandusky, 49 F.3d 1154, 1159 (6th Cir.1995) (internal quotation omitted). This is why the standard for a Terry stop is reasonable suspicion and not arrant suspicion. The only question that need be answered is whether a reasonable officer could conclude that a Terry stop was justified based on articulable facts and his knowledge, training, and experience as an officer. To hold law enforcement to a more exacting standard is to undermine the purpose behind the Supreme Court’s decision in Terry. See Terry v. Ohio, 392 U.S. 1, 22-24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The district court’s decision does not, as the majority insists, purport to give police the authority to stop every vehicle traveling on Esmonde. More accurately, the district court’s decision finds reasonable suspicion to stop a suspect vehicle when the vehicle is the same color and size of the reported vehicle, when the vehicle is spotted within twenty-five seconds of dispatch’s initial broadcast of the vehicle’s description, when the suspect vehicle is the only vehicle traveling on the same street— and the same block—as the reported vehicle, and when the driver matches the racial description of the suspect.
*416 Viewing the facts in a light most likely to support the judgment below, I conclude that the district court’s findings were not clearly erroneous. Accordingly, I would affirm.
For these reasons, I respectfully dissent.

. Without an additional description of the suspect vehicle, there is no basis to conclude, as the majority has, that an officer could not reasonably mistake a Dodge Neon for a BMW. Compare, e.g., http://members.tripod. com/~SeCrEtZoNe]/bmw9.jpg (last visited July 6, 2006) (picture of a green BMW), with http://www.qssx.com/neonhil.jpg (last visited July 6, 2006) (picture of green Dodge Neon).