[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 9, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11961
Non-Argument Calendar

_____

D. C. Docket No. 06-20795-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO PABLO SUSINI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 9, 2008)**

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Pedro Pablo Susini appeals his convictions, following a conditional plea of

guilty, for knowingly having control of credit card skimming devices and

equipment, in violation of 18 U.S.C., §§ 1029(a)(4) and 2, and knowingly possessing, without lawful authority, a means of identification of another person, in violation of 18 U.S.C. § § 1029 (a) (1), (2) and (4) and 18 U.S.C. § § 1028A and 2. The sole issue on appeal is whether the district court erred when it denied Susini's motion to suppress evidence found in his residence. Susini argues that the officers exceeded the scope of consent during the search. He also asserts that the evidence seized by the officers was not obviously contraband and, therefore, the plain view doctrine does not apply. After careful review, we affirm.

We review a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and the district court's application of law to those facts de novo. United States v. Ramirez, 476 F.3d 1231, 1235-36 (11th Cir.), cert. denied, 127 S.Ct. 2924 (2007). When the facts are disputed, the version of the evidence adopted by the district court must be accepted by this Court "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (internal quotation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" Amadeo v. Zant, 486 U.S. 214, 226 (1988) (quotation omitted).

The relevant facts are straightforward. Susini was charged, in a six-count superseding indictment, with various credit card and identity theft charges, pursuant to 18 U.S.C., §§ 1029(a)(4) and 2, 18 U.S.C. § § 1029 (a) (1), (2) and (4), and 18 U.S.C. § § 1028A and 2. He moved to suppress the evidence found in his residence, contending that his consent to search the residence was involuntary because the officers made a "show of authority," such that Susini did not feel free to deny the officers request to search his home. Susini also argued, in the alternative, that the officers exceeded the scope of the permission granted because they sought permission to search his home only for evidence of a marijuana grow house, but during the search, they entered and searched areas were it was impossible for marijuana growth to be taking place.

At an evidentiary hearing on the motion, Officer Aaron Rodriguez, of the Miami-Dade Police Department, testified that on September 5, 2006, in response to an anonymous tip of marijuana being grown in the residence, he performed a "knock and talk" at the residence where Susini lived. Although there were approximately seven officers on the scene, he and Detective Willie Nap were the only two who went up and knocked on the door. A man and a woman answered the door, and he and Detective Nap explained they were there to investigate the tip about marijuana growth. They then requested and obtained verbal and written

consent to search the residence.  Once inside the residence, a guest, who was in the residence, led Officer Rodriguez to a shed in the backyard.  While he was in the area of the shed, he heard a "thump" come from the inside of the residence.  Because he was alarmed by the noise, he made radio contact with the other officers and asked them to investigate the noise.  When he returned to the inside of the house, Officer Rodriguez went to a rear bedroom, where he found Susini and Detective Victor Gill standing and where it looked like furniture had been moved around.  He immediately saw blank credit cards scattered all over the floor.  Since the credit cards were all from the same bank, and had no raised names or numbers on them, Officer Rodriguez became suspicious and believed the cards were contraband.  He subsequently looked into a closet in the bedroom, and found what he believed was a machine used for imprinting credit cards.

During cross-examination, Officer Rodriguez acknowledged that marijuana grow operations are pretty obvious -- they involve pots, plants, lights, and sometimes tampering with electricity.  He said that if he had walked into a room that was being used as a lab, he would immediately recognize it as such, and that he could tell that the back room was not being used as a lab.  Officer Rodriguez further stated, in response to questions from the district judge, that it was only after

4

seeing electrical wires on the floor leading to the closet that he opened the door where he found the machine.

During Officer Rodriguez's testimony, the government admitted into evidence the Spanish consent-to-search form. Officer Rodriguez, who spoke Spanish and translated the form, testified that the document said the following: (1) you have the right to refuse to allow the search and the right to require that a search warrant be obtained; (2) a search warrant is issued by a judge and will only be issued if the judge feels that probable cause exists; (3) anything found inside during the search could be considered evidence, and used against you in court; (4) knowing these rights, do you consent to the search; and (5) that they agree that the officers can take anything they believe is evidence, and the form is being signed voluntarily.

Detective Gill also testified at the suppression hearing. On September 5, 2006, he was working as backup with Officer Rodriguez. He entered Susini's residence after Rodriguez radioed that he had heard a noise coming from the house. When Detective Gill got to the bedroom in the rear of the residence, he found Susini in the process of moving a nightstand over some credit cards which were loose on the floor. Detective Gill saw hundreds of credit cards, only some of which had names on them. Gill reiterated that upon entering the bedroom, the door

5

to the room was open, there were hundreds of credit cards in plain view, and Susini was there holding the dresser. Detective Gill contacted Rodriguez to let him know what he found. After Rodriguez entered the bedroom, he opened the closet and found the machine.

Susini testified in support of suppression. He stated that when he heard the knock on the door, there were several officers that had already entered his yard, and they had surrounded his home, and that when he answered the door, he encountered several officers and a big dog. The officers said that they had received a report that marijuana was being grown at the residence. They told Susini that if they could come in and make sure there was no marijuana being grown in the house, they would go away. According to Susini, because he knew there was something illegal in the bedroom, he went "back towards the back of the house to check it out and make sure it was okay." He testified that there was nothing in plain view in the bedroom, and that the machines were in the closet, but covered by clothes and blankets. He also stated that the credit cards were under the furniture and wrapped in a piece of cloth. Susini testified that Rodriguez moved the furniture, thus revealing the cards. Susini acknowledged that both he and his wife agreed to let the officers in the house, and that his wife signed the consent to search form.

At the close of all the evidence, the district court stated that (1) it was crediting the testimony of the officers over that of Susini, (2) it found the consent to search the residence was voluntarily given, (3) it was logical for the officers to respond the way they did to the area where the noise was heard, and (4) the credit cards were in plain view and thus not subject to suppression. The court further concluded that, although it was apparent there was not a grow house being operated, it was not unreasonable for the officers to look in the closet since evidence of a grow operation may have been located therein. Therefore, the officers did not exceed the scope of the consent, and the machine located therein was admissible.

Susini, reserving his right to appeal the denial of his motion to suppress, agreed to plead guilty to Counts two counts of the superseding indictment. The court then sentenced Susini to an 18-month term of imprisonment on Count III and a consecutive 24-month term on Count IV, and 3 years of supervised release. This appeal followed.

The Fourth Amendment of the United States Constitution protects an individuals right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. At the forefront of this Fourth Amendment protection is reasonableness. <u>Florida v. Jimeno</u>, 500 U.S. 248, 250 (1991). <u>Consensual</u>

searches have consistently been held to be reasonable. Id. at 250-251. The only restraint on a validly authorized search conducted pursuant to consent is "that the scope of the search be limited to the terms of its authorization." United States v. Rackley, 742 F.2d 1266, 1270-71 (11th Cir. 1984). Permission to conduct a general search includes permission to search any compartment or container therein that might reasonably contain the objects of the search. United States v. Martinez, 949 F.2d 1117, 1120 (11th Cir. 1992).

Generally speaking, there is no reasonable expectation of privacy in objects that are exposed to the public. Thus, it is well-settled that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced into evidence." United States v. Harris, 390 U.S. 234, 236 (1968). The "plain view" doctrine allows a warrantless seizure where "(1) an officer [was] lawfully located in the place from which the seized object could be plainly viewed and [had] a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." Smith, 459 F.3d at 1290. For an item's incriminating character to be "immediately apparent," the police merely need probable cause to believe that the item is contraband. Texas v. Brown, 460 U.S. 730, 741-42 (1983). Probable cause "merely requires that the facts available to the officer would warrant a man of

8

reasonable caution in the belief . . . that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." Id. at 742 (internal quotations and citations omitted).

In the instant case, after an evidentiary hearing on the suppression motion, at which the district court heard the testimony of two officers and Susini himself, the district court chose to credit the testimony of the officers over that of Susini. The district court's choice to credit the testimony of the officers over that of Susini is not clear error. See Amadeo, 486 U.S. at 226.

Construing the facts in the light most favorable to the government, as the prevailing party below, the evidence shows that the officers went to Susini's residence based on a tip that there was a marijuana grow operation taking place. Since they did not have a warrant to search the residence, they knocked and asked for permission. Both Susini and his wife gave verbal consent to search the residence and Susini's wife signed a consent to search form. There was testimony that, as part of a grow operation, there are pots, plants, lights, and tampering with electricity. While the officers were in the bedroom, one of them observed gray electrical lines leading into the closet. On this record, since the officers had a general consent to search the residence, and pots, plants, and other evidence of a

9

dismantled grow operation could have been in the closet, the officers were not acting outside the scope of the consent to search when they looked in the closet. See Martinez, 949 F.2d at 1120.

As for suppression of the credit cards, the evidence shows that, while in the process of performing a consensual search, one of the officers heard a loud noise coming from the rear of the residence. Taking the facts in the light most favorable to the government, when the officers responded to that area of the home, the officers found Susini standing in the bedroom with a large amount of embossed, but not imprinted, credit cards at his feet. Officer Rodriguez testified that he immediately recognized the credit cards to be contraband. The officers had permission to be in the residence; therefore, even though they had initially entered to look for evidence of a marijuana growth operation, it was lawful for them to seize the credit cards on the floor because they were in plain view. See Harris, 390 U.S. at 236; see also Horton, 496 U.S. at 137.

We likewise discern no error in the decision to deny suppression of the machine. In light of the fact that the officers had already found hundreds of embossed, but not imprinted, credit cards in plain view in the home, it was reasonable for the officers to believe that the machine they found in the closet was incriminating evidence. Therefore, the officers had probable cause to believe that

the machine was contraband and to seize it.  See Brown, 460 U.S. at 742.  The fact that they did not immediately recognize what it was, or that it was contraband, is not dispositive, given the existence of this probable cause.

After thorough review of the record, we discern neither clear error in the district court's findings of fact nor error in its application of the law to those facts.

**AFFIRMED.**