**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2764
_____

LAWRENCE FISHER,
                                        Appellant

v.

GERALD L. ROZUM; DISTRICT ATTORNEY OF
THE COUNTY OF ALLEGHENY;
ATTORNEY GENERAL OF THE STATE
OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 3-06-cv-00220)
District Judge: Hon. Kim R. Gibson
_____

Argued June 21, 2011

BEFORE: BARRY, AMBRO and COWEN , Circuit Judges

(Filed : August 3, 2011)


Lisa B. Freeland, Esq. (Argued)
Office of the Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222

       Counsel for Appellant

Ronald M. Wabby, Jr., Esq. (Argued)
Office of the District Attorney
436 Grant Street
401 Allegheny County Courthouse
Pittsburgh, PA 15219

       Counsel for Appellees

_____

OPINION

_____


COWEN, Circuit Judge.

       Lawrence Fisher, who is currently serving a life sentence for a Pennsylvania first-degree murder conviction, appeals from the order of the United States District Court for the Western District of Pennsylvania dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. We granted a certificate of appealability as to whether Fisher established cause excusing his procedural default in failing to exhaust his Brady claim in state court. We determine that there was cause. Therefore, we will vacate the District Court's order insofar as it dismissed Fisher's Brady claim on the grounds that he failed to establish cause. In turn, this matter will be remanded for the District Court to determine whether Fisher also satisfied the applicable prejudice requirement.

I.

       On January 29, 1995, Dwayne Hudgins was shot and killed. Beginning on February 27, 1996, Fisher went on trial for this homicide in the Allegheny County Court of Common Pleas. The Commonwealth presented, among other things, the eyewitness testimony of the victim's cousin, Richard Marlon Epps, who identified Fisher as the

2

shooter. On March 4, 1996, the jury returned a guilty verdict against Fisher on first-degree murder and related charges. In May 1996, he was sentenced, inter alia, to a mandatory term of life imprisonment for the murder conviction. The Pennsylvania Superior Court affirmed Fisher's conviction, and the Pennsylvania Supreme Court denied his petition for allowance of appeal on August 27, 1998. He then filed a petition under the Pennsylvania Post Conviction Relief Act ("PCRA") on August 2, 1999. However, the trial court denied relief, the Pennsylvania Superior Court affirmed, and, on January 30, 2008, the Pennsylvania Supreme Court again denied allowance of appeal.

Fisher filed a pro se § 2254 petition with the District Court on October 11, 2006. On October 17, 2006, the Federal Public Defender was appointed to represent Fisher. On May 24, 2007, Fisher filed an amended petition, claiming that the Commonwealth suppressed impeachment evidence in violation of Fisher's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Kyles v. Whitley, 514 U.S. 419 (1995).

Specifically, Fisher has asserted that the Commonwealth failed to disclose critical Brady evidence concerning Epps. On May 1, 1995, his trial counsel (Patrick J. Thomassey, Esq.) submitted a request for pre-trial discovery and inspection, specifically demanding "[m]aterial evidence favorable to the accused" as well as "[i]nformation re: eyewitness to crime." (A52.) According to Fisher, the Commonwealth "failed to provide any information tending to show an agreement with Epps." (Appellant's Brief at 12 (citing A52, A60-A83).) In response to Fisher's subsequent discovery request filed in

3

connection with his federal habeas proceeding, the Commonwealth provided him with a copy of the materials that it purportedly furnished to Thomassey. The Commonwealth does not assert that the produced materials included any information concerning an agreement or understanding with Epps. However, in its answer to Fisher's amended habeas petition, it did refuse to "conced[e] that the fact that the witness had pending charges was not disclosed to the defense prior to [May 2007]." (Commonwealth's Answer at 24 n.18.) More generally, the Commonwealth denies that any agreement or understanding was reached with Epps, at least prior to Fisher's trial or in exchange for Epps's testimony against Fisher.

It appears that, on February 12, 1996, Epps entered an open guilty plea to several felony charges that had been pending for more than a year in the Allegheny County Court of Common Pleas. He purportedly faced a maximum penalty of 42 years of incarceration and was originally scheduled to be sentenced on April 8, 1996. However, he did not appear for sentencing as scheduled, was arrested pursuant to a warrant issued by the sentencing court, and ultimately received a below-guideline sentence on July 30, 1996. At this sentencing hearing, the prosecutor (Assistant District Attorney Lawrence Sachs, Esq.) explained to the sentencing court that, since the guilty plea was entered, "the defense counsel and myself have come to an accord with respect to a sentence that would be acceptable to the Court." (A77.) The prosecutor then went on to observe that Epps "was a key witness in a homicide trial." (A78.) Epps's own attorney (Perry Perrino, Esq.) added that he "spoke with Nick Radoycis [who was the prosecutor at Fisher's trial]

4

and . . . he said, if necessary he would come in and testify on behalf of Mr. Epps, and he would say that if it had not been for Mr. Epps' testimony, which was key to the homicide case, they would not have achieved a conviction." (A78-A79.)

On December 4, 2008, the Magistrate Judge recommended that the District Court deny Fisher's claims for relief as well as his outstanding requests for discovery, an evidentiary hearing, and a certificate of appealability. The Magistrate Judge specifically determined that Fisher's <u>Brady</u> claim was procedurally defaulted and that Fisher failed to establish cause excusing this default. She stated that: (1) the information concerning Epps's sentencing was likely available during Fisher's direct appeal and certainly was available during his PCRA proceeding; (2) even if the underlying facts were not discovered until May 2007, a procedural default evidently would still occur because "Pennsylvania law provides that newly-discovered evidence claims may be presented through a second or subsequent PCRA petition if such claims are filed within sixty (60) days of the time the evidence is discovered" (A4 n.1 (citing 42 Pa. Cons. Stat. § 9545(b)(2))); (3) unlike in the typical case, the cause inquiry here diverges from the underlying merits of the <u>Brady</u> claim because the procedural default occurred after the existence of the undisclosed <u>Brady</u> evidence was known to Fisher; and (4) in the end, "the fact of initial suppression by the Commonwealth of an alleged deal with witness Epps is not sufficient to establish cause for failure to raise a <u>Brady</u> claim after the fact of Epps receiving consideration at sentencing for his testimony against Fisher became known" (A5-A6 (citing <u>Albrecht v. Horn</u>, 485 F.3d 103, 130 (3d Cir. 2007))).

5

Fisher objected to the Magistrate Judge's report and recommendation, but, on March 16, 2009, the District Court adopted it as its own, dismissed the habeas petition, and denied a certificate of appealability. Fisher then moved to amend under Federal Rule of Civil Procedure 59(e). On February 4, 2010, the District Court remanded the matter to the Magistrate Judge for a proper determination as to whether Fisher made a showing of actual innocence. On the other hand, it agreed with the Magistrate Judge that he failed to establish cause with respect to his Brady claim.

According to Fisher, he established cause because he was unaware of the Commonwealth's dealings with Epps until May 2007 and that the Magistrate Judge thereby erred in finding as a matter of fact that he knew about the undisclosed Brady materials when he defaulted his Brady claim on direct appeal or during his PCRA proceeding. The District Court rejected this theory because, even if the materials constituted newly discovered evidence, Petitioner still could have filed a second PCRA petition under 42 Pa. Cons. Stat. § 9545(b)(2) within 60 days of his discovery. After noting that Fisher never addressed the availability of this procedure in his Rule 59(e) motion, the District Court added that, "[a]lthough the Magistrate Judge provided alternative grounds for the absence of cause by citing 42 Pa.C.S.A. § 9545(b)(2), the Court does not find fault with her conclusion that the Brady material 'was likely available during Fisher's direct appeal, and certainly was available during Fisher's state PCRA proceeding.'" (A25 (quoting A4).)

On February 5, 2010, the Magistrate Judge again recommended that the habeas

6

petition be dismissed. Fisher filed objections to the Magistrate Judge's supplemental report and recommendation, specifically claiming that he could not return to the state courts following his May 2007 discovery because of Pennsylvania's "public record" doctrine. On May 11, 2010, the District Court adopted the supplemental report and recommendation, dismissed the petition, and denied a certificate of appealability. Finding them to be beyond the scope of the remand, the District Court specifically refused to consider Fisher's repeated objections to its Brady ruling.

Fisher filed a timely notice of appeal. On October 29, 2010, we granted a certificate of appealability as to whether Fisher established cause excusing his procedural default in failing to exhaust his Brady claim.

## II.

Fisher has never attempted to raise his Brady claim in the state courts.[1] However, the exhaustion requirement is inapplicable "where the state courts would not consider the unexhausted claims because they are procedurally barred." Slutzker v. Johnson, 393 F.3d 373, 380 (3d Cir. 2004) (citing Doctor v. Walters, 96 F.3d 675, 681 (3d Cir. 1996)). Given his assertion that he first discovered the facts underlying his claim in May 2007 as well as the existence of a 60-day time limit for raising PCRA claims based on newly discovered evidence, see 42 Pa. Cons. Stat. § 9545(b)(2), it is now clearly too late for

---

[1] The District Court possessed subject matter jurisdiction over this habeas proceeding pursuant to 28 U.S.C. § 2254. This Court, having issued a certificate of appealability, has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. The parties further agree that we exercise plenary review over the District Court's decision because it did not conduct an evidentiary hearing. See, e.g., Lambert v. Beard, 633 F.3d 126, 130 (3d Cir.

Fisher to raise his <u>Brady</u> claim in the state courts, <u>see, e.g.</u>, <u>Slutzker</u>, 393 F.3d at 380.

Therefore, the lack of exhaustion must be excused, but "[t]his excuse from the exhaustion

requirement does [Fisher] no good . . . unless he can avoid the concomitant doctrine of

procedural default." <u>Id.</u> at 380-81 (citing <u>Doctor</u>, 96 F.3d at 683). For his part, Fisher

acknowledges that his <u>Brady</u> claim was procedurally defaulted and argues that he

established the requisite cause and prejudice to excuse his default.

Generally speaking, "[t]o show 'cause,' the petitioner 'must demonstrate some

objective factor external to the defense that prevented compliance with the state's

procedural requirements.'" <u>Holloway v. Horn</u>, 355 F.3d 707, 715 n.3 (3d Cir. 2004)

(quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)). In turn, a petitioner pursuing

a claim under <u>Brady</u> must establish, inter alia, that evidence favorable to the defense was

"suppressed by the State, either willfully or inadvertently." <u>Strickler v. Greene</u>, 527 U.S.

263, 281-82 (1999). In the specific context of a <u>Brady</u> claim, the cause requirement

typically parallels the underlying suppression element. <u>See, e.g.</u>, <u>Banks v. Dretke</u>, 540

U.S. 668, 691 (2004); <u>Strickler</u>, 527 U.S. at 282; <u>Breakiron v. Horn</u>, 642 F.3d 126, 132

n.6 (3d Cir. 2011). However, the inquiries may diverge in certain circumstances, such as

where the "facts supporting [the] <u>Brady</u> violation were known to [the] petitioner and [his]

claim could have been raised on direct appeal or his post conviction case." (Appellant's

Brief at 28 (citing <u>Albrecht</u>, 485 F.3d at 130).) The District Court, in particular,

determined that, even if the <u>Brady</u> materials constituted newly discovered evidence,

2011).

Fisher still could (and should) have filed a second PCRA petition. We note that the PCRA does generally allow a petitioner to file second or subsequent petition if the underlying facts were unknown to the petitioner and could not been ascertained by the exercise of due diligence, 42 Pa. Cons. Stat. § 9545(b)(1)(ii), and if the petition was filed within 60 days of the date the claim could have been presented, id. § 9545(b)(2).

However, it appears that, under Pennsylvania law, this PCRA exception is inapplicable where the newly discovered evidence is a matter of public record (and, inter alia, was otherwise extant at the time that petitioner was actively represented by counsel). See, e.g., Commonwealth v. Bennett, 930 A.2d 1264, 1275 & n.14 (Pa. 2007); Commonwealth v. Chester, 895 A.2d 520, 523 (Pa. 2006); Commonwealth v. Whitney, 817 A.2d 473, 476 (Pa. 2003); Commonwealth v. Lark, 746 A.2d 585, 588 n.4, 590 (Pa. 2000); Commonwealth v. Taylor, 933 A.2d 1035, 1042 (Pa. Super. Ct. 2007). In its short discussion of the public record doctrine in its appellate brief, the Commonwealth merely admits that "[t]he existence of Mr. Epps's criminal charges and conviction would have been public record," and it then cryptically notes that "appellant's alleged Brady claim would not have been, because the claim is wholly without merit and not evident in the 'public record.'" (Appellee's Brief at 30.)

In the end, we conclude that, pursuant to prior Pennsylvania case law, no state corrective procedure was available to Fisher following his alleged May 2007 discovery because, among other things, it was a matter of public record that Epps entered a guilty plea shortly before Fisher's trial and that, shortly after this trial and apparently because of

9

his testimony against Fisher himself, Epps received a below-guideline sentence. Therefore, Fisher, like a typical petitioner seeking to raise a procedurally defaulted Brady claim, need only show that the evidence was suppressed by the prosecution in order to establish cause. We determine that Fisher satisfied his burden.

We specifically observe that: (1) before the trial began, Fisher's attorney expressly requested all material evidence favorable to the accused as well as information regarding eyewitnesses to the crime; (2) the Commonwealth evidently failed to disclose any information concerning any implication, promise, or understanding of leniency with respect to Epps and his sentencing; and (3) the Commonwealth apparently confirmed Fisher's reliance on its earlier disclosures as fulfilling its obligations under Brady by failing to provide such information during either the direct appeal or the PCRA proceeding and by its ongoing refusal to acknowledge that it failed to comply with Brady. See, e.g., Banks, 540 U.S. at 692-98; Strickler, 527 U.S. at 282-89; Breakiron, 642 F.3d at 132 n.6. With respect to the Commonwealth's denial of any agreement, Fisher quite reasonably points to what would appear to be, at the very least, a highly coincidental sequence of events, with Epps entering a guilty plea to several felony charges shortly before he was to testify against Fisher and then—shortly after his critical testimony— receiving a below-guideline sentence. We also cannot overlook certain statements made by the prosecutor and Epps's defense counsel at the sentencing hearing, which clearly tended to indicate that some sort of understanding of leniency existed between the Commonwealth and Epps with respect to his testimony against Fisher. Additionally, the

10

Commonwealth acknowledges that it was not until May of 1997 that Fisher knew or should have known of the alleged deal. We accordingly are not confronted with the situation in which the petitioner arguably knew or should have known about allegedly suppressed Brady evidence at the time of his or her trial, direct appeal, or state post-conviction proceedings. See, e.g., Amadeo v. Zant, 486 U.S. 214, 222 (1988) ("If the District Attorney's memorandum was not reasonably discoverable because it was concealed by Putnam County officials, and if that concealment, rather than tactical considerations, was the reason for the failure of petitioner's lawyers to raise the jury challenge in the trial court, then petitioner established ample cause to excuse his procedural default under this Court's precedents."); United States v. Pelullo, 399 F.3d 197, 213 (3d Cir. 2005) ("Our jurisprudence has made clear that Brady does not compel the government "'to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself.'"" (quoting United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984))).

### III.

For the foregoing reasons, we will vacate the District Court's order insofar as it dismissed Fisher's Brady claim on the grounds that he failed to establish cause excusing his procedural default. This matter will be remanded for the District Court to determine whether Appellant also satisfied the applicable prejudice requirement.