ROTH, Circuit Judge,
dissenting:
I believe that the law of the case here dictates that an understanding was in place between Epps and the Commonwealth; thus, any remand should consider only prejudice — not whether or when there was any understanding. But even if there were no understanding, I believe that there was a Brady violation. For both these reasons, I respectfully dissent.
In considering whether Fisher should have been told of the status of the charges *124 pending against Epps, we all realize that an offender, who is experienced in the criminal justice system like Epps, knows full well the benefits that can be cultivated from the prosecutors when he cooperates, with or without an agreement, in the resolution of another crime — when he tells the prosecutors what they want to hear, whether or not it is true. When Epps first spoke to police officers at the time of the Hudgins shooting, he was well aware of the charges he was facing for drug delivery and theft offenses. When Epps was shown the photo array in the Fisher case, the police were already aware both of Epps’s criminal history of 14 arrests and 4 convictions and of the charges pending against him. Both the police and Epps understood at this point how to play the game — whether or not there was an explicit understanding. For that reason, the failure of the prosecution to inform Fisher of the status of the charges against Epps constituted a Brady violation even absent an explicit deal.
As we noted in Fisher v. Rozum, 441 Fed.Appx. 115, 119 (3d Cir.2011) (Fisher I), Epps pled guilty to a number of charges just before Fisher’s trial, with sentencing to occur after Epps testified at trial. After Epps testified, facing a maximum of forty-two years imprisonment, the Commonwealth agreed to a below-guideline sentence, stating that Epps was a “key witness in a homicide trial,” — ie., the Fisher trial. Epps’s defense counsel also represented to the court that the prosecutor in the Fisher case had told him that, without Epps’s testimony, they would not have achieved a conviction in the Fisher case.
Without the testimony of this key witness, there probably would not have been a conviction. If the jury had known about Epps’s guilty plea and the charges he was facing, the jury would have considered these facts in making its credibility determination about Epps. Indeed, the jury could reasonably have concluded that Epps was expecting leniency if he testified against Fisher and thus was not credible. “The materiality standard for Brady claims is met when ‘the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ ” Banks v. Dretke, 540 U.S. 668, 698, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004) (quoting Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). Because there was no physical evidence that Fisher was the shooter, and as the District Court found, Epps was “was the only effective witness the Commonwealth had to offer,” the defense suffered materially for being unable to impeach Epps in this way.
As we observed in United States v. Risha, 445 F.3d 298, 303 n. 5 (3d Cir.2006):
There can be no dispute that the information in question is favorable to the defense because [the witness’s] expectation of leniency in the state proceedings could have been used to impeach him. We also believe that there can be no serious dispute regarding materiality.... The question is not whether disclosure would have resulted in a different verdict, but whether suppression of the evidence “undermine[d] confidence in the outcome of the trial.”
Id. (quoting Kyles, 514 U.S. at 434-35, 115 S.Ct. 1555). Even with no acknowledged deal in place, the failure to disclose the guilty plea was prejudicial under Brady. Moreover, once we have determined that there was enough of an “understanding” to establish cause, no other information about the nature and timing of the deal is necessary for our prejudice inquiry. The inability of the defense to impeach Epps with this testimony undermines my confidence *125 in the verdict. See Kyles v. Whitley, 514 U.S. at 435, 115 S.Ct. 1555.
The majority, however, focuses on the “nature and timing” of a deal between Epps and the Commonwealth, stating that the Fisher I court did not make any factual findings as to whether a deal existed at ’the time of Epps’s testimony. But then the majority contradicts itself by noting that the Fisher I panel found that “some sort of understanding of leniency” did in fact exist (citing Fisher I, 441 Fed.Appx. at 119). The Fisher I panel remanded the case to the District Court with instructions to consider only prejudice because it had resolved the cause prong. Therefore, whether the Fisher I panel called it a finding of fact or not, and whether the understanding with Epps was formal or not, the panel concluded that an understanding existed between Epps and the Commonwealth. This is now law of the case.
I don’t know what the majority hopes to gain on remand.' The majority reasons that the “accord” that the Commonwealth and Epps had come to before Epps’s sentencing hearing could have occurred in the four months after Fisher’s trial, rather than before it. The only reason those four months could be relevant is if the majority is suggesting that there was no deal, or in fact, no understanding, at the time of Epps’s testimony. But this is precisely the conclusion that is foreclosed by law of the case. 'The “timing” of the deal that the majority seeks is not relevant to this case. The potential prejudice existed from the time that the police met with Epps with knowledge of Epps’s past record and pending charges. There is no need to remand to consider it.
Furthermore, eventually acknowledging that some kind of understanding did exist, the majority goes on to suggest that there may be no prejudice because Epps could have been rehabilitated on the stand by his prior consistent statements. Perhaps he could have, but giving weight to such a claim puts the cart before the horse. If it matters that Epps could have been rehabilitated, then he must have been in need of rehabilitation. In other words, by conceding the need for rehabilitation, the majority implicitly finds that the Commonwealth’s omission was prejudicial and, in fact, violated Brady.
In sum, Fisher was deprived of a powerful opportunity to impeach Epps’s testimony. For this reason, I would affirm the District Court.